A92A1519. HAMBY v. THE STATE.
(426 SE2d 670)

ANDREWS, Judge.

Hamby appeals his conviction of armed robbery, burglary, and two counts of terroristic threats resulting from an altercation with Marty Fordham, his nephew, and Marty's wife, Wanda Fordham.

Viewed in favor of the verdict, the evidence was that Hamby asked Marty Fordham, who owned a farm, to let him know if Marty found him a good horse for sale. On August 1, 1989, at Marty's suggestion, Hamby and Marty went to the Boyt residence where Hamby gave Boyt a check for $800 for a horse and a second check for $140 for tack. Because Hamby had no place to keep the horse, Marty rode it to his farm and agreed to keep it until Hamby was able to fence in a place for it. The next day, Hamby brought Fordham two bags of feed for the horse.

Thereafter, Hamby decided he was too old to deal with the horse and wanted Fordham to purchase it from him. There is no consensus as to what occurred in the interim between August 1, 1989 and March 15, 1990 with regard to any agreement about the horse. Hamby did call Wanda Fordham on March 15, 1990 and indicate that he wanted either the horse or his money. When Marty returned the call, Hamby cussed him and said he was going to get either the horse or the money, whatever it took. After hanging up, Marty received a call from Hamby's wife, advising him to watch out because Hamby was on his way over.

Marty Fordham opened the back door as Hamby arrived and slung open the screen door. Hamby had a shotgun which he pointed at Fordham and his wife when she came in. Hamby then forced his way in and told them he was going to get some money or kill them all. Hamby then followed Marty Fordham as he went to the bedroom to get $300 cash which he was saving to build a barn. Fordham handed the three hundred-dollar bills to Hamby who threw one on the floor before he left with the $200.

Each Fordham stated that they heard Hamby threaten to kill the other.

1. In his first enumeration, Hamby contends the court erred in denying his motion for directed verdict on the armed robbery count because defendant did not have the requisite intent to commit theft. Although this ground was not specifically argued when the motion for directed verdict was made at the close of the State's case, we consider the issue of the legal sufficiency of the evidence on this ground. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Humphrey v. State*, 252 Ga. 525, 527 (314 SE2d 436) (1984).

As phrased by Hamby in the motion for new trial and here, the argument is that "defendant was simply going to obtain the horse to

which he had a valid claim of right, or alternatively, his nephew would have to pay the monies promised."

Even assuming that there had been a legally binding agreement reached as to the purchase of the horse from Hamby by Fordham, which evidence was disputed, this would not justify the conclusion reached by Hamby. As stated by the Supreme Court in answering the certified question of this court on this issue, "we hold the violent taking of money or property from the person of another by force or intimidation, without the consent of the owner, for the purpose of converting the same to the use of the taker for the payment of a demand claimed to be due him by one from whom the money or property is so taken, constitutes the offense of robbery. And that he can not under such circumstances justify the taking and be excused of the offense of robbery on the ground that the person from whom the money or property was so taken was indebted to him, and that the taking was to pay the debt." *Moyers v. State,* 186 Ga. 446, 455-456 (197 SE 846) (1938).[1]

2. The second enumeration is controlled adversely to Hamby by our ruling in Division 1.

3. Hamby contends that there was insufficient corroboration of the offenses of terroristic threats as required by OCGA § 16-11-37.

Here, the threat to each victim was made in the presence of the other and each testified as to the threat to the other. Such corroboration by a co-victim is sufficient. *Boone v. State,* 155 Ga. App. 937, 939 (1) (274 SE2d 49) (1980). " 'Slight circumstances may be sufficient for corroboration and the question of corroboration is one solely for the jury. If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value. [Cit.]' " Id.

4. Prior to trial, Hamby filed his "Notice, Demand and Motion for Discovery," an omnibus discovery request. In it, paragraph 6 contained the *Brady* request.[2] Nine separate items of evidence were enumerated in that paragraph, most of which were categories of evidence which would be admissible at trial, as well as names of witnesses. These were followed by the statement that "[t]his request is made under the authority of *Brady,* [supra]." The motion specifically requested that all the enumerated items be examined in camera by the court and copies of all items not revealed be made a part of the record under seal for appellate review.

During the pretrial hearing conducted after the jury was impanelled on the first day of trial, the following exchange occurred concern-

---

[1] Since this rationale provides no justification for his actions, Hamby's reliance on *Anderson v. State,* 262 Ga. 7 (413 SE2d 722) (1992) is misplaced.

[2] Seeking disclosure of exculpatory evidence contained in the prosecution's file pursuant to *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

ing this issue:[3]

"State: My notes indicate a *Brady* —

Defense: There's a *Brady* —

State: — which was done March 25th, 1991.

Court: All right.

Defense: It has been done?

State: It has been done.

Defense: I don't have a notation of it having been done.

Court: I assume if it's been done, there was nothing exculpatory or arguably favorable to the accused in the State's file.

State: I don't see an order, but my file indicates that a *Brady* was done March 25th, 1991.

Court: All right, sir.

State: Which would have been done by —

Defense: Judge Whalen.

Court: Well, in any event, you say one has been done?

State: Yes, sir.

Court: All right.

Defense: My files don't indicate that."

When defense counsel was then specifically asked what else he had, he responded "I think that's all."

Had defense counsel contested that such a review had actually taken place, as opposed to that fact not appearing in his notations, this was the point at which counsel should have insisted upon his request. "[A] trial court is not required to conduct an in camera inspection of the state's file in connection with a 'general' Brady motion unless, after the state has made its response to the motion, the defense makes a request for such an inspection. [Cits.]" *Tribble v. State*, 248 Ga. 274, 275 (1) (280 SE2d 352) (1981). *Swann v. State*, 256 Ga. 254 (347 SE2d 555) (1986); *Salley v. State*, 199 Ga. App. 358, 361 (2) (405 SE2d 260) (1991).

Therefore, no error has been shown.

5. Finally, defendant argues that the offenses of terroristic threats and armed robbery merged.

Pretermitting the issue of whether this issue has been preserved since no objection was made to the sentences entered, see *Hill v. State*, 183 Ga. App. 654, 657 (4) (360 SE2d 4) (1987), there was no merger. *Barnett v. State*, 204 Ga. App. 588, 589 (2) (420 SE2d 96) (1992).

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

---

[3] The judge conducting the trial was not the same judge who conducted the pretrial proceedings.

DECIDED NOVEMBER 30, 1992 —
RECONSIDERATION DENIED DECEMBER 16, 1992

*Adams & Adams, W. Allen Adams, Jr.*, for appellant.
*W. Fletcher Sams*, District Attorney, *Randall K. Coggin*, Assistant District Attorney, for appellee.