**Jeffrey Scott WHITESCARVER,
Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–6428.

Court of Appeals of Alaska.

June 19, 1998.

James A. Wendt, Assistant Public Advocate, and Brant G. McGee, Public Advocate, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

## OPINION

MANNHEIMER, Judge.

This case requires us to decide whether a person may defeat a charge of robbery by showing (or, more precisely, by establishing a reasonable possibility) that they assaulted the victim in an attempt to recover property that rightfully belonged to them. We hold that the answer is "no": a defendant's claim of ownership does not justify or excuse an attempt to recover property by assault.

On November 29, 1995, at around 1:30 in the morning, 18–year–old Jeffrey Scott Whitescarver and four of his friends paid a visit to the home of his 64–year–old grandmother, Thelma Whitescarver. Thelma Whitescarver had adopted Jeffrey, and in her capacity as Jeffrey's adoptive mother, she had applied for and received his Alaska Permanent Fund dividend check. Jeffrey Whitescarver came to his grandmother's house in the middle of the night because he wished to take personal possession of this dividend money.

Whitescarver's teenage cousin, Brian Leigh, answered the door. Whitescarver falsely told Leigh that he had locked himself out of his apartment; he asked if he could come in and warm up. Whitescarver entered the house, followed by his companions. One of these companions was holding a shotgun. After they were inside the house, Whitescarver's companion cocked the shotgun, and then Whitescarver announced that he wanted his Permanent Fund dividend money. Leigh told Whitescarver that he did not have Whitescarver's money.

Whitescarver and his friends then accompanied Leigh downstairs, so that Leigh could awaken Whitescarver's grandmother. When Thelma Whitescarver had been roused, Whitescarver repeated his demand for his Permanent Fund dividend money. During the ensuing argument, Whitescarver's grandmother told him that she did not have access to his money in the middle of the night; she urged Whitescarver to return the next day, during business hours. Whitescarver would not be put off; he told his grandmother that he had waited long enough for his money, and he wanted the money then and there. During this entire argument, one of Whitescarver's friends stood watch at the door to the room, holding the shotgun.

Whitescarver broke off arguing with his grandmother and conferred with his friends in the hallway. Following this conference, Whitescarver decided he would look for his

money in an unlocked safe in the closet. However, he found only papers in the safe.

Whitescarver and his companions conferred again about whether they should "rip off what they could get" from his grandmother's house. Whitescarver and his friends also discussed what should be done with Whitescarver's grandmother and cousin. Eventually, Whitescarver and his friends decided to leave his grandmother's house. As they backed out of the room, Whitescarver's friend kept the shotgun pointed at Thelma Whitescarver and Brian Leigh. On their way out of the house, Whitescarver or one of his friends stole Thelma Whitescarver's purse. The purse was later recovered with nothing missing from it.

Whitescarver was indicted on two counts of first-degree robbery (robbery committed while armed with a deadly weapon), AS 11.41.500(a)(1). One count named Thelma Whitescarver as the victim; the other count named Brian Leigh. At his trial, Whitescarver was convicted as charged on the count involving his grandmother. With regard to the count involving his cousin, the jury convicted Whitescarver of the lesser included offense of third-degree assault, AS 11.41.220(a)(1)(A).

Whitescarver's primary contention on appeal is that the trial judge should have instructed the jury to acquit Whitescarver if they found a reasonable possibility that his act of robbing his grandmother and assaulting his cousin was done for the purpose of recovering property that he honestly believed belonged to him (the money from his Alaska Permanent Fund dividend).[1]

In support of this argument, Whitescarver's opening brief cites various common-law authorities and a few Alaska cases that discuss issues of peripheral relevance. It is obvious that Whitescarver's appellate attorney studiously avoided discussing (or even citing) the Alaska case most directly on point, *Woodward v. State*, 855 P.2d 423 (Alaska App.1993).[2]

■ In *Woodward*, this court held that a defendant's good-faith claim of ownership or entitlement to property is not a defense to the crime of extortion committed by threatening future physical injury, AS 11.41.520(a)(1). *Id.* at 427. Although the Model Penal Code advocated a view of extortion that emphasized its theft-like aspect (the fact that someone is being deprived of property), the Alaska Legislature adopted the majority view that the gravamen of extortion is its assaultive aspect. The gist of the crime is that the defendant has threatened to inflict injury upon someone if the property is not yielded. *Id.* at 425–26.

The legislature did enact a limited "claim of right" defense to three types of extortion: extortion committed by threatening to accuse someone of a crime, by threatening to expose secret information that would harm another person's standing in the community, or by threatening to have a public servant take action (unfavorable to another person) or withhold action (favorable to that person).[3] However,

> [b]y electing to extend the claim-of-right defense to only three of the seven types of threat in the extortion statute, the legislature made unmistakably clear its intent to withhold the defense as to the remaining four types.... [T]he claim-of-right [defense] set out in subsection (c) of the extortion statute does not extend to [extortion by] threats of physical injury....

*Woodward*, 855 P.2d at 427.

■ For purposes of analyzing Whitescarver's case, robbery is essentially an aggra-

---

1. The pertinent part of Whitescarver's proposed jury instruction read:

   Evidence has been introduced that the defendant believed that he had a right to take the property he is alleged to have attempted to [forcibly] obtain. If a person takes, or attempts to take, ... property from the presence of another, but does so in the good faith belief that he has a right to take the property, [then] the specific intent essential to the crime of robbery is lacking.

   The prosecution must prove beyond a reasonable doubt that the defendant acted with the specific intent to take property that he had no right to possess.

2. Superior Court Judge Elaine M. Andrews explicitly relied on *Woodward* when she denied Whitescarver's request for a jury instruction on his proposed "claim of right" defense.

3. *See* AS 11.41.520(c) and AS 11.41.520(a)(2), (a)(3), and (a)(4).

vated form of the type of extortion discussed in *Woodward*—extortion committed by a threat to inflict physical injury. Both offenses involve an attempt, by threat of injury, to induce another person to part with property. If the defendant's intent is to take property from the victim's immediate presence and control, and if the threat is of imminent injury, then the defendant's conduct will constitute robbery. If these two aggravating factors are not present (for instance, if the threat is to inflict injury at some future time), then the defendant's conduct will constitute extortion.[4]

■ Viewed in this light, it is evident that there is no "claim of right" defense to robbery—for if, as we recognized in *Woodward*, the legislature affirmatively manifested its intention to prohibit this defense in cases of extortion by threat of future injury, it is inconceivable that the legislature intended to allow the defense in the more aggravated circumstances of robbery.

Whitescarver attempts to avoid this result by arguing that he had a good-faith belief that his Permanent Fund dividend check was not "property of another"—that he should not be deemed guilty of robbery because he honestly believed that he alone was entitled to the check. However, the crime of robbery does not require proof that the property taken from the victim was "property of another". As we noted in *Woodward*, the statutory definition of robbery, AS 11.41.510(a), "[does] not require the taking of 'property of another', but only the taking of 'property'." *Id.* at 428.

The legislature's decision to define robbery in terms of "property" rather than the more restrictive "property of another" appears to stem from an explicit policy decision made by the drafters of the Criminal Code. They rejected the common-law view that robbery was "an aggravated form of theft", and they instead decided to place primary emphasis on "the physical danger to the victim and his difficulty protecting himself from sudden attacks against his person". The drafters of the Code specifically stated that their definition of robbery was intended to "emphasize[ ] the person, rather than the property, aspects of the offense".[5]

In other words, even if Whitescarver honestly believed that his grandmother was unlawfully withholding his dividend check from him, Alaska law would not allow Whitescarver to enter his grandmother's home with a firearm, threaten her with injury unless she surrendered the dividend check, then hold her at bay with the weapon while he examined the contents of her safe and carried off her purse for later inspection. These acts constituted robbery, regardless of who was entitled to possession of the dividend check. Judge Andrews properly refused to instruct the jury on Whitescarver's proposed "claim of right" defense.

Whitescarver raises one other point on appeal, related to his sentencing. Whitescarver was a first felony offender. For the class A felony offense of first-degree robbery, Whitescarver faced a presumptive term of 5 years' imprisonment.[6]

---

4. Robbery is defined in AS 11.41.510(a): "A person commits the crime of robbery ... if, in the course of taking or attempting to take property from the immediate presence and control of another, the person uses or threatens the immediate use of force upon any person with intent to (1) prevent or overcome resistance to the taking of the property or the retention of the property after taking; or (2) compel any person to deliver the property or engage in other conduct which might aid in the taking of the property."

Extortion is defined (in relevant part) in AS 11.41.520(a)(1): "A person commits the crime of extortion if the person obtains the property of another by threatening or suggesting that either that person or another may ... inflict physical injury on anyone, except under circumstances constituting robbery[.]"

5. Alaska Criminal Code Revision, *Tentative Draft*, Part 2, pp. 81–82.

6. First-degree robbery is a class A felony: AS 11.41.500(b). The presumptive term for a first felony offender convicted of this crime under AS 11.41.500(a)(1) is 5 years' imprisonment if they did not personally use or possess a firearm. AS 12.55.125(c)(1); *see Dailey v. State*, 675 P.2d 657, 661–62 (Alaska App.1984) (holding that even though a defendant can be convicted of armed robbery based on an accomplice's use or possession of a firearm, the defendant will not face the enhanced presumptive term for robbery committed by firearm unless the defendant personally used or possessed a firearm).

Prior to sentencing, Whitescarver proposed various mitigating factors under AS 12.55.155(d). One of these mitigating factors was (d)(9)—that his conduct was among the least serious within the definition of the offense. In support of this mitigating factor, Whitescarver reiterated his claim that he had merely been attempting to recover property that was rightfully his. Whitescarver also pointed out that he had harmed no one and that the only property actually removed from his grandmother's house was her purse, which was eventually recovered with all of its contents intact.

 Notwithstanding the above, Judge Andrews found that Whitescarver had failed to prove this mitigating factor. The judge noted that Whitescarver had committed armed robbery against a family member in the middle of the night. Although Judge Andrews acknowledged that the crime might have been worse, she concluded that Whitescarver had failed to demonstrate that his offense was among the least serious armed robberies. On appeal, we are to reverse Judge Andrews's finding only if we are convinced that it is clearly erroneous. *Lepley v. State,* 807 P.2d 1095, 1099 n. 1 (Alaska App. 1991).

As noted above, robbery is primarily an assaultive crime, a crime against the person, rather than a theft crime. For this reason, even though Whitescarver's victims lost no property, Judge Andrews could properly emphasize the fact that Whitescarver participated in an armed nighttime assault on his grandmother and cousin. The potential for physical harm is a more important factor in determining the seriousness of a robbery than is the amount of property taken. *See Degler v. State,* 741 P.2d 659, 662 (Alaska App.1987).

In addition, Whitescarver was the principal actor in the robbery. Even though he was not the one who held the shotgun, his desire to obtain his Permanent Fund dividend check was apparently the driving force behind the robbery. *See Hale v. State,* 764 P.2d 313, 316 (Alaska App.1988) (a sentencing judge could properly reject the contention that the defendant's conduct was among the least serious when the evidence showed that the de-fendant was the principal actor involved in the offense); *accord, Abdulbaqui v. State,* 728 P.2d 1211, 1215 (Alaska App.1986).

Given the circumstances of Whitescarver's offense, Judge Andrews was justified in rejecting the proposed mitigating factor. Whitescarver has failed to show that the judge's decision was clearly erroneous. We therefore uphold Judge Andrews's decision.

The judgement of the superior court is AFFIRMED.