2001 UT App 13

**STATE of Utah, Plaintiff and Appellee,**

v.

**Robert W. STRINGHAM and Gale Irene Stringham, Defendants and Appellants.**

No. 990630–CA.

Court of Appeals of Utah.

Jan. 11, 2001.

Jerome H. Mooney, Larsen & Mooney Law, Salt Lake City, for Appellants.

Mark L. Shurtleff, Atty. Gen., and Jeffrey S. Gray, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before GREENWOOD, P.J., DAVIS, and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 Defendants Robert Stringham and Gale Stringham appeal from convictions for Communications Fraud, a second degree felony, in violation of Utah Code Ann. § 76–10–1801 (1990), and Racketeering, a second degree felony, in violation of Utah Code Ann. § 76–10–1603 (1990). We affirm.

## BACKGROUND

¶ 2 In the fall of 1992, defendants organized Utah Treatment and Addiction Health Services (UTAHS) to provide drug abuse and domestic violence counseling. Defendant Robert Stringham conducted UTAHS's business operations, which included the accounting and billing practices. Defendant Gale Stringham also participated in the control and direction of UTAHS's operations, as well as instructed UTAHS's employees on billing procedures. In addition to overseeing the daily operations of UTAHS, defendants also performed counseling services. Mr. Stringham was a certified alcohol and drug counselor, but he was not licensed by the State. Ms. Stringham possessed a Ph.D. in psychology, but she was also not licensed by the State.[1]

¶ 3 In December of 1992, UTAHS hired Dr. Charles Walton, a licensed physician, to co-facilitate a domestic violence group on Wednesday nights with Carolyn Edwards.[2] Dr. Walton also occasionally consulted with UTAHS patients to determine whether they needed prescriptions to deal with problems of depression or alcohol abuse. Dr. Walton did not participate in any other groups or supervise any other UTAHS employees.

¶ 4 To facilitate his billing, Dr. Walton provided Mr. Stringham with a signature stamp. Dr. Walton requested that the signature stamp be used solely for billing his patients. Despite Dr. Walton's request, virtually all of the health insurance forms coming out of UTAHS's Salt Lake office bore Dr. Walton's signature stamp, showing Dr. Walton as the treating or supervising physician. Dr. Walton's signature stamp was also used, without his knowledge, to endorse insurance checks received by UTAHS for patients whose treatment Dr. Walton neither conducted nor supervised.

¶ 5 Defendant Robert Stringham was charged with thirteen counts of communications fraud and one count of racketeering. Defendant Gale Stringham was charged with five counts of communications fraud and one

count of racketeering. Before trial, defendants' counsel and the State discussed a potential plea agreement. The plea agreement, however, was never finalized between the parties, nor was it submitted to the trial court for approval. Four days before trial, defendants filed a motion to enforce the proposed plea agreement. The trial court denied the motion.

¶ 6 At trial, the State called more than a dozen witnesses, the majority of whom were UTAHS patients, who testified that Dr. Walton had not provided the services they received. The State also produced the insurance forms for these patients, which bore Dr. Walton's signature stamp and showed him as the treating or supervising physician.

¶ 7 At the conclusion of the State's case, defendants filed a motion to dismiss the case against Ms. Stringham, alleging insufficient evidence to present the case to the jury. The trial court denied the motion.

¶ 8 At the end of trial, defendants asked the trial court to include a "good faith" instruction pertaining to the communications fraud charges. Defendants' request was consistent with their argument that UTAHS's billing procedures conformed to industry practice. Defendants claimed they were not aware of any impropriety in UTAHS's billing procedures until Ms. Stringham read an article in *The Utah Psychologist* that stated, regarding billing practices, " 'common wisdom' dictates that if service is being performed by a psychological assistant, intern, *or other unlicensed person,* it is necessary to clearly indicate who actually provided the service." Dr. Chris K. Wehl, *Insurance News, The Utah Psychologist,* Summer 1994 (v. 4 no. 10), at ¶¶ 15–16 (citation omitted) (emphasis added).

¶ 9 The trial court denied defendants' request, explaining that

> I don't think that the good-faith instruction is a correct statement of the law. The reason I think that is because the mental

---

1. Ms. Stringham was, however, working towards obtaining her license at UTAHS under the supervision of Dr. Geri Alldedge, a licensed psychologist.

2. Carolyn Edwards was one of the principal organizers of UTAHS. At the time relevant to this case, Ms. Edwards was neither a certified alcohol or drug counselor, nor was she licensed by the State.

state is clearly set forth in the statute. I think it's possible for an individual to be in good faith but, nevertheless, reckless within the meaning of the statute. And I'm concerned about creating a confusion between those two.

Defendants were convicted as charged. This appeal followed.

## ISSUES AND STANDARD OF REVIEW

¶ 10 Defendants raise three arguments on appeal. First, defendants argue the trial court erred by not enforcing a tentative plea agreement between defendants and the State. A trial court's ruling regarding the enforceability of a plea agreement is a question of law. *See State v. Patience,* 944 P.2d 381, 384 (Utah Ct.App.1997) (stating "whether the State is entitled to rescind the plea agreement, [is a] question[ ] of law"). " 'We review questions of law for correctness, according no deference to the trial court's conclusions.' " *Id.* at 384–85 (quoting *State v. Yates,* 918 P.2d 136, 138 (Utah Ct. App.1996)).

¶ 11 Next, defendants argue the trial court erred by refusing to include defendants' good faith defense instruction regarding the communications fraud counts to the jury. " ' "Whether the trial court's refusal to give a proposed jury instruction constitutes error is a question of law, which we may review for correctness." ' " *State v. Widdison,* 2000 UT App 185, ¶ 52, 4 P.3d 100 (quoting *State v. Hamilton,* 827 P.2d 232, 238 (Utah 1992) (citation omitted)).

¶ 12 Finally, defendants argue that (1) the State's evidence against Gale Stringham was insufficient to warrant submission to the jury; and (2) alternatively, the State's evidence against Ms. Stringham was insufficient to sustain a conviction. "We review for correctness the trial court's conclusion that the evidence established a prima facie case," and thus, warrants submission to the jury. *State v. Kihlstrom,* 1999 UT App 289, ¶ 8, 988 P.2d 949, *cert. denied,* 4 P.3d 1289 (Utah 2000). Further, " '[w]e will reverse a jury verdict only when ... we find that "the evidence to support the verdict was completely lacking or was so slight and uncon-

vincing as to make the verdict plainly unreasonable and unjust." ' " *State v. Silva,* 2000 UT App 292, ¶ 13, 13 P.3d 604 (quoting *State v. Rudolph,* 2000 UT App 155, ¶ 22, 3 P.3d 192 (citation omitted)).

## ANALYSIS

### A. The Tentative Plea Agreement

¶ 13 Defendants argue the trial court erred by failing to enforce a tentative plea agreement between defendants and the State. We disagree. Defendants, relying upon principles of contract law, seek specific performance of the tentative plea agreement. However, although " '[p]rinciples of contract law provide a useful analytical framework' in cases involving plea agreements, ... [they] 'cannot be blindly incorporated into the criminal law in the area of plea bargaining.' " *Patience,* 944 P.2d at 387 (quoting *United States v. Ocanas,* 628 F.2d 353, 358 (5th Cir.1980)).

¶ 14 In *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), the United States Supreme Court explained that "[a] plea bargain standing alone is without constitutional significance; in itself it is a *mere executory agreement* which, *until embodied in the judgment of a court,* does not deprive an accused of liberty or any other constitutionally protected interest." *Id.* at 507, 104 S.Ct. 2543 (emphasis added) (footnote omitted). Addressing the same issue, the Utah Supreme Court has also explained that "plea agreements are binding on the parties and the court *once the plea is entered and accepted." State v. Kay,* 717 P.2d 1294, 1304 (Utah 1986) (emphasis added). In addition to being an executory agreement, the decision whether to accept or reject a plea agreement lies within the discretion of the trial court. *See State v. Mane,* 783 P.2d 61, 66 (Utah Ct.App.1989). Thus, even where "the government and the defendant reach a plea agreement, the court is not required to accept it." *United States v. Hernandez,* 948 F.2d 316, 325 (7th Cir.1991).

¶ 15 In the present matter, the tentative plea agreement was neither presented to nor accepted by the trial court. From the record before us, we find no evidence that defen-

dants took any action in reliance on the tentative plea agreement, and therefore, they suffered no prejudice by the trial court's unwillingness to compel the State to honor the agreement. *See State v. Moss,* 921 P.2d 1021, 1027 (Utah Ct.App.1996) (stating "so long as defendant took no actions in reliance on the illegal plea agreement which would substantially affect retrial, defendant is not prejudiced").

¶ 16 Furthermore, the trial court determined that had the parties presented the tentative plea agreement, it was *unacceptable* because it failed to adequately address the issue of restitution. Accordingly, we find no error in the trial court's refusal to enforce the tentative plea agreement.

### B. Good Faith Instruction

¶ 17 Defendants next argue the trial court erred by refusing to give a good faith instruction in the context of the communications fraud charges to the jury. Neither the Utah Supreme Court nor this court have squarely addressed this issue, making this a case of first impression. "We review the trial court's failure to give requested jury instructions for correctness, granting the trial court no particular deference in its determination." *State v. Vigil,* 922 P.2d 15, 28 (Utah Ct.App.1996). " 'Failure to give requested jury instructions constitutes reversible error only if their omission tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law.' " *Summerill v. Shipley,* 890 P.2d 1042, 1044 (Utah Ct.App. 1995) (citation omitted).

¶ 18 To support their argument, defendants rely on a body of case law holding that "general instructions on willfulness and intent are insufficient to fully and clearly convey a defendant's good faith defense to the jury." *United States v. Haddock,* 956 F.2d 1534, 1547 (10th Cir.1992). Jurisdictions following this body of case law reason that a specific good faith instruction "directs the jury's attention to the defense of good faith with sufficient specificity to avoid error." *United States v. Casperson,* 773 F.2d 216, 223 (8th Cir.1985). The Tenth Circuit has concluded that "failure to give an adequate

good faith instruction is reversible error provided 'evidence is sufficient such that a reasonable jury could believe' the defendant's good faith defense." *Haddock,* 956 F.2d at 1547 (citation omitted).

¶ 19 However, the relatively small number of jurisdictions adopting the good faith instruction requirement acknowledge that it is the minority position. In *Haddock,* the Tenth Circuit explained that "[d]espite the contrary position taken by *most other circuits* that have addressed the [good faith instruction] issue, we are *constrained* by the precedent in this circuit to hold that the instructions in this case were inadequate to state [the defendant's] good faith theory of defense to the jury." *Id.* at 1547 n. 11 (emphasis added) (listing circuits not requiring a good faith instruction: *United States v. McElroy,* 910 F.2d 1016, 1026 (2d Cir.1990) (holding complete instruction on willfulness and intent to defraud state the "essence of a good faith instruction"); *United States v. Nivica,* 887 F.2d 1110, 1124–25 (1st Cir. 1989); *United States v. Gunter,* 876 F.2d 1113, 1118–20 (5th Cir.1989); *United States v. Alcantar,* 832 F.2d 1175, 1179 (9th Cir. 1987); *United States v. McGuire,* 744 F.2d 1197, 1201–02 (6th Cir.1984); *United States v. Gambler,* 662 F.2d 834, 837 (D.C.Cir. 1981)).

¶ 20 We decline to adopt the minority position, finding the reasoning of the majority persuasive. As explained in *United States v. Gross,* 961 F.2d 1097 (3rd Cir.1992), "[t]he majority position derives from the theory that the good faith defense instruction is merely surplusage." *Id.* at 1103. Jurisdictions adopting the majority position

> have viewed the good faith instruction as simply a reiteration that the government must carry its burden in demonstrating that the accused acted knowingly and willfully, because a jury finding that the defendant has acted knowingly and willfully is inconsistent with a finding that the defendant acted in good faith.

*Id.* Ultimately, if a jury instruction "already contains a specific statement of the government's burden to prove these elements of the crime, the good faith instruction is simply a

redundant version of the instruction on those elements." *Id.*

¶ 21 Finally, we agree with the Third Circuit's statement in *Gross* that in some cases it may be appropriate to give a good faith instruction, but that it is "not reversible error for the district court to refuse to give the good faith instruction . . . , we commend to the district judges in the exercise of their discretion [the good faith instruction's] use as a supplement to the 'knowing and willful' charge in future cases." *Id.*

¶ 22 Turning to the present matter, the trial court instructed the jury that the State must establish beyond a reasonable doubt that "the pretenses, representations, promises, or material omissions made or omitted were made or omitted intentionally, knowingly, or with a reckless disregard for the truth." Further, the trial court also issued the following instructions:

> INSTRUCTION 39: A false or fraudulent pretense can be a false representation of fact calculated to induce confidence on the part of one to whom the representation is made, and is accompanied by a promise to do something in the future. A false or fraudulent pretense can also be a false representation of an existing fact, made with knowledge of its falsity, and which is adapted to deceive the person to whom it is made.

> INSTRUCTION 40: You are instructed that "intentionally" means to do something purposely or willfully, and with a conscious objective or desire to engage in the conduct or cause the result. Not accidentally or involuntarily.
>
> You are instructed that "knowingly" means with knowledge, or consciously, intelligently, willfully, or intentionally. An individual acts knowingly when he acts with awareness of the nature of his conduct or the existing circumstances. A person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> You are instructed that "reckless disregard for the truth" means that the defendant is aware of but consciously disregards a substantial and unjustifiable risk that the pretenses, representations, promises or material omissions of the scheme or artifice to defraud are false. The risk must be of such nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

¶ 23 The trial court's instructions adequately instructed the jury on the requisite elements of the crime charged, and contained a "specific statement of the [State's] burden to prove" that defendants acted either intentionally, knowingly, or in reckless disregard for the truth. *Gross*, 961 F.2d at 1103. Accordingly, we conclude the trial court's refusal to give defendants' good faith instruction was not in error. "By giving a detailed instruction on the elements of the crime with which [defendants] w[ere] charged, the court ensured that a jury finding of good faith would lead to acquittal." *Id.*

### C. Sufficiency of Evidence

¶ 24 Defendants next argue that (1) the State's evidence against defendant Gale Stringham was insufficient to warrant submission to the jury; and (2) alternatively, the State's evidence against Gale Stringham is insufficient to sustain her conviction. We disagree. Utah Code Ann. § 76–10–1801 (1990) states:

> (1) Any person who has devised any scheme or artifice to defraud another or to obtain from another money, property, or anything of value by means of false or fraudulent pretenses, representations, promises, or material omissions, and who communicates directly or indirectly with any person by any means for the purpose of executing or concealing the scheme or artifice is guilty of
>
> . . . .
>
> (c) a third degree felony when the value of the property, money, or thing obtained or sought to be obtained is more than $1,000 but does not exceed $10,000.

. . . .

(3) Reliance on the part of any person is not a necessary element of the offense described in Subsection (1).

(4) An intent on the part of the perpetrator of any offense described in Subsection (1) to permanently deprive any person of property, money, or thing of value is not a necessary element of the offense.

. . . .

(6) To communicate as described in Subsection (1) means to bestow, convey, make known, recount, impart; to give by way of information; to talk over; or to transmit information. Means of communication include . . . use of the mail, . . . spoken, and written communication.

(7) It is an affirmative defense to prosecution under this section that the pretenses, representations, promises, or material omissions made or omitted by the defendant were not made or omitted knowingly or with a reckless disregard for the truth.

*Id.*

(1) Defendant Gale Stringham's Motion to Dismiss

¶ 25 At the close of the State's case in chief, defendant filed a motion to dismiss the claims against defendant Gale Stringham, arguing that the State's evidence was insufficient to warrant submission to the jury. The trial court denied the motion.

¶ 26 We will uphold a trial court's denial of a motion to dismiss for insufficient evidence if, " 'upon reviewing the evidence and all inferences that can be reasonably drawn from it, . . . some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt.' " *Kihlstrom,* 1999 UT App 289 at ¶ 8, 988 P.2d 949 (quoting *State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989)). "We review for correctness the trial court's conclusion that the evidence established a prima facie case." *Id.*

¶ 27 In the present matter, the State's evidence showed that defendant Gale Stringham was one of four principal organizers of UTAHS, and that she, together with her husband, controlled and directed the business. The State also established that Ms. Stringham was sufficiently familiar with UTAHS's billing practices to instruct others on the organization's billing. Finally, the State offered the testimony of Kim Platt, a UTAHS employee hired to assist with billing. Ms. Platt testified that both defendants instructed her to stamp Dr. Walton's signature in the provider/physician block on all insurance claim forms out of the Salt Lake office. Based on Ms. Platt's testimony, the trial court concluded that because "[defendant Gale Stringham] directed [Ms. Platt] to make entries out of the Salt Lake office stamped with Dr. Walton's signature[, this] was . . . enough to create a jury question on that issue" and deny defendant's motion to dismiss.

¶ 28 The State presented more than a dozen witnesses, the majority of whom were patients who had received services from UTAHS. These witnesses testified that Dr. Walton did not provide the services they had received. The State then presented evidence that the insurance forms submitted by UTAHS for services performed on these patients were stamped in the provider/physician block with the signature of Dr. Walton. We conclude that the State's evidence established a prima facie case against defendant Gale Stringham, and was, therefore, sufficient to send to the jury.

(2) Sufficiency of Evidence to Support Defendant Gale Stringham's Conviction

¶ 29 Alternatively, defendants argue that the State's evidence is insufficient to support a conviction against defendant Gale Stringham. We disagree. "We will reverse a jury verdict only when . . . we find that 'the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.' " *Silva,* 2000 UT App 292 at ¶ 13, 13 P.3d 604 (quoting *Rudolph,* 2000 UT App 155 at ¶ 22, 3 P.3d 192).

¶ 30 After reviewing the evidence presented against Ms. Stringham, we are not convinced that it is so lacking as to " 'make the [jury's] verdict plainly unreasonable and unjust.' " *Id.* (citation omitted). Both defendants instructed Ms. Platt to stamp Dr. Walton's signature in the provider/physician block on all insurance claim forms coming out of the Salt Lake office regardless of whether Dr. Walton supervised or performed the services. Further, Ms. Stringham knowingly submitted treatment plans to insurance providers which documented treatment that she knew she had not, and would not, provide. Subsequently, UTAHS billed the insurance providers for these services.

 ¶ 31 Finally, defendants argue that using Dr. Walton's signature stamp for the Salt Lake office's billing was an acceptable industry practice because Dr. Walton was UTAHS's medical director.[3] We find defendants' argument unpersuasive. The evidence demonstrates that, generally, a medical director has the overall supervisory responsibility for all clinical aspects of the facility. Additionally, the jury was told that the director typically reviews all client charts to ensure that intakes are properly conducted, treatment plans are implemented, and termination of a patient's treatment is appropriate.

¶ 32 In the present matter, Dr. Walton's duties at UTAHS were quite limited. His supervisory duties were limited to Carolyn Edwards. Dr. Walton also occasionally screened individuals for alcohol abuse and treated "client[s] that didn't have a private physician that might need to be evaluated for an anti-depressant." Accordingly, even if we were to assume that UTAHS could have legitimately billed under its medical director's name, Dr. Walton's duties and responsibilities at UTAHS clearly do not rise to the level of medical director. We conclude, therefore, that the evidence offered at trial was more than sufficient to sustain Ms. Stringham's convictions.

3. Interestingly, Dr. Walton testified that he did not remember being appointed or performing as

## CONCLUSION

¶ 33 The trial court did not err by failing to enforce a tentative plea agreement that was neither implemented nor presented to the trial court for approval.

 ¶ 34 Further, we conclude that the trial court did not err by refusing to provide the jury with defendants' good faith instruction. Although we commend trial judges who, when appropriate, provide a good faith instruction to the jury, we do not find the absence of such an instruction to be reversible error in this case. Where a detailed instruction containing the elements of the crime charged is given to the jury, the trial court is within its discretion to refuse to administer a good faith instruction.

¶ 35 Finally, we conclude that sufficient evidence exists to sustain defendant Gale Stringham's convictions for communications fraud and racketeering.

¶ 36 Affirmed.

¶ 37 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and JAMES Z. DAVIS, Judge.