2003 UT App 27

**STATE of Utah, Plaintiff and Appellee,**

v.

**Richard Lyle HOBBS, Defendant and Appellant.**

No. 20020146–CA.

Court of Appeals of Utah.

Feb. 6, 2003.

Happy Morgan, Grand County Public Defender, Moab, for Appellant.

Mark L. Shurtleff, Attorney General and Karen A. Klucznik, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, BENCH, and GREENWOOD.

## OPINION

GREENWOOD, Judge:

¶1 Richard Lyle Hobbs (Defendant) was convicted of aggravated robbery, a first degree felony, and aggravated assault, a third degree felony. Defendant appeals the trial court's rejection of his proposed jury instructions, defining his claim of right defense, rejection of evidence relating to his defense, and the trial court's aggravated robbery jury instruction.

## BACKGROUND

¶2 "In setting out the facts from the record on appeal, we resolve all conflicts and doubts in favor of the jury's verdict and the rulings of the trial court." *State v. Babbell*, 770 P.2d 987, 988 (Utah 1989). On June 24, 2001, Mike Hughes (Hughes), owner of Adrift Adventures (Adrift), was working alone at the company headquarters in Moab, Utah. Defendant, an employee of Adrift, called Hughes to tell him that he would be coming over to discuss his paycheck.[1]

¶3 When Defendant arrived, Hughes and Defendant proceeded upstairs to discuss Defendant's payroll problems. While waiting for the account to come up on the computer, Hughes and Defendant started arguing about whether money was owed to Defendant and about an impending civil suit Defendant threatened to file against Hughes. Hughes testified that as he was turning toward Defendant to tell him he would look into the account, Defendant, pointing a gun at Hughes, told him, "you owe me money," and "things are over for you." Hughes testified that he believed he was going to die.

1. The parties dispute whether Defendant also intended to pick up a gun that Hughes purport-edly held for Defendant.

¶ 4 Hughes then told Defendant that if they went downstairs he could have all the money in the till, approximately $2,000. Defendant followed Hughes downstairs. As they neared the bottom of the stairs Hughes threw papers up in the air and fled, running down the street yelling, "He's got a gun." One witness, Officer Green, testified that he saw Defendant chasing Hughes with a gun in his hand and turned his vehicle around to assess the situation. Another witness, Alex Crosby (Crosby), also testified that he saw Defendant with a gun in his hand, chasing Hughes.

¶ 5 As Hughes was running down the street, he flagged down a patrol car, driven by Officer Reger. Officer Reger exited the vehicle. Hughes jumped into the patrol car and drove about half a block before stopping and exiting the vehicle. Officer Reger testified that when Hughes jumped into his patrol car, Defendant turned and walked away, holding something in his hand.

¶ 6 Hughes testified that Defendant was still running toward him with a gun when he exited the patrol car. Crosby testified that he saw Defendant chase Hughes after he exited the patrol car. After exiting the patrol car Hughes saw two of his employees, screamed, "[Defendant] is trying to kill me," and dove into their vehicle. The two employees testified that they saw Defendant holding a gun above his head at the time Hughes jumped into their vehicle. The gun was never fired nor was any money taken from Adrift.

¶ 7 At this point, Officer Green approached the scene and saw Officer Reger, who was dressed in plain clothes, holding a gun. Officer Green approached Officer Reger with his gun drawn. After a short stand off, Officer Reger identified himself, and the two officers proceeded to look for Defendant. Defendant claimed that after he saw the officers in a stand off, with guns drawn, he left the scene for his own safety.

¶ 8 A witness saw Defendant toss something into some bushes where officers found a magazine clip with a bullet in it, as well as an unspent shell. Several hours later, Defendant turned himself into the police. Although not giving his correct name, Defendant stated: "Here I am, I did it."

¶ 9 Prior to trial, Defendant filed proposed jury instructions that included instructions on a claim of right defense based on his "bona fide impression and honest belief that the money he was seeking was his own." At trial, the court rejected Defendant's proposed instructions and prohibited evidence related to his claim of right defense. Defendant was found guilty of aggravated robbery and aggravated assault. Defendant appeals his conviction of aggravated robbery.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Defendant first argues the trial court erred in rejecting his proposed jury instructions relating to his claim of right defense. "[W]e review the trial court's determination concerning jury instructions for correctness and accord it no particular deference." *State v. Jones*, 878 P.2d 1175, 1176 (Utah Ct.App.1994). Additionally, "[w]e review for correctness a trial court's statutory interpretation, according it no particular deference." *State v. Barrick*, 2002 UT App 120,¶ 4, 46 P.3d 770 (quotations and citations omitted).

¶ 11 Defendant next argues the trial court erred in not permitting evidence of Defendant's claim of right defense by excluding evidence that the victim, Hughes, had a reputation for dishonesty, and had a practice of underpaying employees. "[A] trial court has broad discretion to determine whether proffered evidence is relevant, and we will find error in a relevancy ruling only if the trial court has abused its discretion." *State v. Kohl*, 2000 UT 35,¶ 17, 999 P.2d 7 (quotations and citation omitted).

¶ 12 Finally, Defendant argues the trial court inadequately instructed the jury on aggravated robbery and robbery. Whether the trial court properly instructed the jury is a question of law, which this court reviews for correctness. *See State v. Stringham*, 2001 UT App 13,¶ 11, 17 P.3d 1153.

## ANALYSIS

### I. Proposed Jury Instructions Relating to Claim of Right Defense

¶ 13 Defendant was convicted of aggravated robbery under Utah Code Ann. § 76–6–302(1) (1999), which states: "A person commits aggravated robbery if in the course of committing *robbery,* he: (a) uses or threatens to use a dangerous weapon...." (Emphasis added.) Robbery is committed when:

(a) the person unlawfully and intentionally takes or attempts to take personal property in the possession of another from his person, or immediate presence, against his will, by means of force or fear; or

(b) the person intentionally or knowingly uses force or fear of immediate force against another in the course of committing a theft.

Utah Code Ann. § 76–6–301(1) (1999). Defendant argues that he is entitled to assert a claim of right defense by virtue of (1) the case of *People v. Hughes,* 11 Utah 100, 39 P. 492, 494 (1895) (permitting claim of right defense where defendant had an honest belief in his entitlement to property); and (2) the robbery statute, which incorporates the defenses in the theft statute.

### A. Viability of *People v. Hughes*

¶ 14 In *Hughes,* the defendant was found guilty of robbery when he used a gun to take money from fellow gamblers. *See Hughes,* 39 P. at 492. The defendant's theory was that he took the money under a "claim of ownership, and an honest belief that [he] had a right to the money." *Id.* The trial court, however, rejected a jury instruction defining the claim of right defense and instead instructed the jury that it was immaterial whose money was taken by the defendant. *See id.* at 494. On appeal, the supreme court reversed, stating:

[It] was material, and the burden of proof was on the prosecution to prove the money was owned by some person other than the defendant, for, if the money belonged to him, and it was wrongfully in the possession of another, he would not be guilty of robbery, as the animus furandi [felonious intent] would be wanting.

*Id.*

¶ 15 Defendant argues that *Hughes* has never been overruled and is binding precedent. Thus, the trial court erred in not permitting instructions relating to the claim of right defense. The trial court held that the claim of right defense described in *Hughes* was superseded by 1973 changes to the Utah Code. We agree. First, Utah Code Ann. § 76–1–105 (1999), enacted in 1973, abolished common law crimes such as robbery. Second, the claim of right defense was superseded by Utah Code Ann. § 76–1–103 (1999), also enacted in 1973, which states, "[t]he provisions of this code shall govern the construction of, the punishment for, and *defenses* against any offense defined in this code...." (Emphasis added.) Because section 76–1–103 states that the criminal code governs all defenses, the claim of right defense for robbery is not available if it is not specifically designated as a defense in the criminal code.

¶ 16 Our reasoning is supported by *State v. Gardiner,* 814 P.2d 568 (Utah 1991). In *Gardiner,* the defendant argued that he had a right to resist arrest under the common law. *See id.* at 569. After detailed analysis of the common law, the court determined that it was "not free to fashion" a rule respecting the common law theories of resisting arrest because the legislature had already acted. *Id.* at 573. The court reasoned that where the legislature enacted a number of specific and general defenses, the failure to enact a general illegal arrest defense "preclude[d] [the court] from finding any generally available common law right.... If such a defense exists in Utah, it must be grounded in the specific code sections under which [the defendant] was convicted." *Id.* at 574.

¶ 17 The case of *State v. Durant,* 674 P.2d 638 (Utah 1983), provides additional support. In *Durant,* the defendant was charged with aggravated arson for burning a "habitable structure." *Id.* at 639. The defendant argued that at common law it was legal to burn one's own dwelling; therefore, where he received permission from the owner—himself—to burn the dwelling, he could not be guilty

of aggravated arson. *See id.* Specifically, the defendant argued that the term "unlawfully" in the arson statute maintained the common law arson definition, which included malicious burning but excluded the burning of one's own dwelling by requiring the burned property to be that "of another." *Id.* at 640.

¶ 18 The court determined that the legislature's omission of "property of another" and inclusion of "habitable structure" in the revision of the arson statute was purposeful and evidence of a shifting emphasis on protecting human life. *Id.* at 641. The court held that the legislature's use of the terms "unlawfully" and "intentionally," changed the mens rea of arson to "require that the burning be other than accidental or careless and that the damage be without justification and contrary to safety precautions."[2] *Id.* at 645. The court stated, " 'It is the power and responsibility of the Legislature to enact laws to promote the public health, safety, morals and general welfare of society, and this Court will not substitute our judgment for that of the Legislature with regard to what best serves the public interest.' " *Id.* at 642 (quoting *Bastian v. King,* 661 P.2d 953, 956 (Utah 1983)).

¶ 19 Consequently, we conclude that *Hughes* has been superseded by the 1973 amendments to the criminal code which does not require consideration of the common law claim of right defense.

B. Robbery Statute

¶ 20 Defendant next argues that even if *Hughes* was superseded by Utah Code Ann. § 76–1–105, the claim of right defense still exists because theft, requiring the taking of another's property, is a lesser included offense of robbery. Therefore, according to Defendant, the statutory defenses to theft are necessarily included as defenses to robbery. We disagree.

¶ 21 The court must "look first to the plain language of the statute." *Stephens v. Bonneville Travel, Inc.,* 935 P.2d 518, 520 (Utah 1997). Each expression of a term "should be interpreted as the exclusion of another. Therefore, omissions in statutory language should 'be taken note of and given effect.' " *Biddle v. Washington Terrace City,* 1999 UT 110,¶ 14, 993 P.2d 875 (quoting *Kennecott Copper Corp. v. Anderson,* 30 Utah 2d 102, 105, 514 P.2d 217, 219 (1973)); *see also In re A.B.,* 936 P.2d 1091, 1098 (Utah Ct.App.1997) (giving force to legislature's choice to exclude rehabilitation from consideration under serious youth offender act where legislature's inclusion in other sections of code indicates legislature knew how to include such factor).

¶ 22 The claim of right defense is clearly available for the crime of theft:

It is a defense under this part that the actor:

(a) Acted under an honest claim of right to the property or service involved; or

(b) Acted in the honest belief that he had the right to obtain or exercise control over the property or service as he did; or

(c) Obtained or exercised control over the property or service honestly believing that the owner, if present, would have consented.

Utah Code Ann. § 76–6–402(3) (1999). However, the claim of right defense is not specified as an available defense for robbery or aggravated robbery. *See id.* §§ 76–6–301 to –302. Where the legislature was obviously aware of the availability of the claim of right defense, having included it within the definition of theft, we assume the legislature would have included it within the robbery statute had the legislature intended to do so.

¶ 23 Many other jurisdictions have addressed this issue and determined that although the claim of right defense may be statutorily available for theft offenses, it is

2. Similar to *State v. Durant,* 674 P.2d 638 (Utah 1983), our legislature has changed the mens rea to "unlawfully and intentionally" when defining robbery as the attempt to take or taking of property by means of force or fear. *See* Utah Code Ann. § 76–6–301(1) (1999). There is no qualification in this definition that permits the taking of property, even if owned by the taker, if doing so involves force. This definition is unambiguous, thus reflecting the legislature's intent to do what "best serves the public interest" by making it illegal to use force to recover any property. *Durant,* 674 P.2d at 642.

not available for robbery or burglary offenses. For example, the Iowa Court of Appeals, considering an appeal of a burglary conviction, analyzed their robbery and burglary statutes to determine whether the claim of right defense was available for those crimes. *See State v. Miller*, 622 N.W.2d 782, 785 (Iowa Ct.App.2000). The court determined that although Iowa's claim of right defense statute expressly states its availability for a person "guilty of theft," defendants accused of robbery and burglary were not permitted to use the defense. *Id.* The *Miller* court stated that to permit another interpretation "would require us to read something into the law that is not apparent from the words chosen by the legislature." *Id.* The court went on to analyze the "modern trend ... to decline to recognize the claim-of-right defense to offenses involving force, such as robbery or burglary." *Id.; see also People v. Tufunga*, 21 Cal.4th 935, 90 Cal.Rptr.2d 143, 987 P.2d 168, 177–78 (1999) (outlining modern trend). The reasons for this conclusion are well-stated in *State v. Ortiz*, 124 N.J.Super. 189, 305 A.2d 800 (1973), where the court found the proposition that a claim of right negates the felonious intent of robbery lacks logic and "is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence. Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied." [3] *Id.* at 802 (footnote omitted).

¶ 24 We therefore hold that the claim of right defense is not available for the crime of robbery because the legislature specifically provided for the common law defense of claim of right only for theft charges. The exclusion of the defense for robbery charges is evidence of the legislature's intent that it not be available for robbery. Consequently, the trial court correctly refused to instruct the jury on the claim of right defense.

## II. Evidence of the Victim's Bias & Dishonesty

¶ 25 Defendant argues that the trial court erred in not permitting greater inquiry into Hughes's reputation for dishonesty.[4] Defendant argues that evidence of Hughes's dishonesty and business practices would have been used by Defendant to show Hughes's bias and lack of credibility.

¶ 26 "[A] trial court has broad discretion to determine whether proffered evidence is relevant, and [this court] will find error in a relevancy ruling only if the trial court has abused its discretion." *State v. Kohl*, 2000 UT 35, ¶ 17, 999 P.2d 7 (quotation and citations omitted). Defendant argues that the ability to produce evidence supporting his defense is a constitutional right guaranteed by the Utah Const. art. I, § 12 ("In criminal prosecutions the accused shall have the right to appear and defend ...."). *Accord* Utah Code Ann. § 77–1–6(1)(a) (1999). However, although Defendant cites *State v. Harding*, 635 P.2d 33 (Utah 1981) to support his claim, he fails to acknowledge the court's statement that if "there is no reasonable basis in the evidence to support the defense or its essential components, it is not error for the trial judge to either refuse to instruct the jury as to the defense, or to instruct them to disregard it." *Id.* at 34. Defendant sought to

---

**3.** Other cases holding that a claim of right defense is not available in robbery cases include the following: *Whitescarver v. State*, 962 P.2d 192, 195 (Alaska Ct.App.1998); *State v. Schaefer*, 163 Ariz. 626, 790 P.2d 281, 284 (Ariz.Ct.App.1990); *Thomas v. State*, 584 So.2d 1022, 1026 (Fla.Dist. Ct.App.1991); *Westmoreland v. State*, 245 Ga. App. 482, 538 S.E.2d 119, 121 (2000); *Crowder v. State*, 241 Ga.App. 818, 527 S.E.2d 901, 904 (2000); *Hamby v. State*, 206 Ga.App. 791, 426 S.E.2d 670, 671–72 (1992); *State v. Brighter*, 62 Haw. 25, 608 P.2d 855, 859 (1980); *Cates v. State*, 21 Md.App. 363, 320 A.2d 75, 82 (1974); *People v. Reid*, 69 N.Y.2d 469, 515 N.Y.S.2d 750, 508 N.E.2d 661, 665 (1987); *People v. Hodges*, 113 A.D.2d 514, 496 N.Y.S.2d 771, 774 (N.Y.App.

Div.1985); *In re Hammer*, 139 Misc.2d 782, 528 N.Y.S.2d 784, 785 (N.Y.Fam.Ct.1988); *Commonwealth v. Sleighter*, 495 Pa. 262, 433 A.2d 469, 471 (1981); *Commonwealth v. Dombrauskas*, 274 Pa.Super. 452, 418 A.2d 493, 497 (1980); *State v. Self*, 42 Wash.App. 654, 713 P.2d 142, 144 (1986); *cf.* Ala.Code § 13A–8–44 (1994); *State v. Messier*, 16 Conn.App. 455, 549 A.2d 270, 274 (1988).

**4.** Defendant was permitted to present evidence of Hughes's character trait for dishonesty through two witnesses who both stated that Hughes had a reputation for dishonesty in the community.

introduce evidence to prove that Hughes owed him money and had a reputation for not timely paying his employees. The evidence was relevant only to his claim of right defense. Defendant's claim of right defense was rejected by the trial court, and we have concluded above that the defense is not available to Defendant. Therefore, it was not error for the trial judge to exclude evidence relating to a defense that is no longer available. *See id.; see also* Utah R. Evid. 402 ("Evidence which is not relevant is not admissible."); *State v. Jaeger,* 1999 UT 1, ¶ 13, 973 P.2d 404 ("[W]here the proffered evidence has no probative value to a fact at issue, it is irrelevant and is inadmissible under rule 402.").

¶ 27 Defendant also argues that rule 608(c) of the Utah Rules of Evidence provides him with unfettered discretion to present evidence of a victim's bias. Rule 608(c) states, "Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." It has long been recognized that a cross-examiner needs to be given "wide latitude in exposing a witness' potential bias." *State v. Hackford,* 737 P.2d 200, 203 (Utah 1987); *State v. Maestas,* 564 P.2d 1386, 1388 (Utah 1977). However, this "wide latitude" in cross-examining for witness bias is "limited by Utah Rule of Evidence 403." *Hackford,* 737 P.2d at 203. Rule 403 permits the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R. Evid. 403; *see also Hackford,* 737 P.2d at 203.

¶ 28 The trial court stated that although the grievances of other employees

> may all tend to show a special sensitivity on Mr. Hughes' part ˙... it does so at the cost of a considerable amount of time, introducing the potential for confusion of the issues, delay, and I just don't think it's worth—and some possible prejudice, I guess, to Mr. Hughes that he ends up being put on trial when he's the alleged

victim in this case and he isn't in control of the prosecution.

Where considerations of time, confusion, and delay were enumerated by the trial court, Defendant has not shown that the trial court abused its discretion in determining that the probative value of Hughes's bias, which was to be used to support Defendant's *rejected* claim of right defense, was substantially outweighed by considerations permitted by rule 403.

### III. Adequacy of Jury Instructions

¶ 29 The Defendant claims that the aggravated robbery instruction and robbery instruction were incorrect, requiring reversal of his robbery conviction.

¶ 30 The relevant instructions state:

#### Instruction No. 3

In order to obtain a conviction, the state must prove each element of the offense beyond a reasonable doubt. Those elements are as follows:

COUNT I: AGGRAVATED ROBBERY

1. That on or about June 29, 2001, defendant, while in the course of committing robbery,

2. Did use a dangerous weapon,

3. Knowingly and intentionally.

#### Instruction No. 4

Robbery is the unlawful and intentional taking or attempted taking of personal property from another, from his person or in his immediate presence, by means of force or fear.

Personal property means anything of value other than land. I can not [sic] assert a defense to a charge of robbery that I believe that the other person owes me money.

¶ 31 Defendant first finds error with Instruction 3, arguing that the trial court did not clearly define aggravated robbery because the instruction did not include a definition of robbery within it. However, "[j]ury instructions must be evaluated as a whole to determine their adequacy." *State v. Garcia,* 2001 UT App 19, ¶ 13, 18 P.3d 1123.

Jury instructions will be affirmed "when the instructions, taken as a whole, fairly tender the case to the jury [even where] one or more of the instructions, standing alone, are not as full or accurate as they might have been." *Id.* (quotations and citations omitted) (alteration in original). Here, the trial court defined robbery in the next instruction. Read as a whole the instructions adequately defined robbery.

¶ 32 Defendant also finds error with Instruction 4, because the trial court omitted subsection 76–6–301(1)(b), which states that robbery can also be committed if "the person intentionally or knowingly uses force or fear of immediate force against another in the course of committing a theft." Utah Code Ann. § 76–6–301(1)(b). Defendant argues that the trial court erred in not including this second definition of robbery within the instruction.

¶ 33 Defendant's argument fails because it was not preserved for appeal. Defendant did not object to Instruction 4. "As a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346. This is because the " 'trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it.' " *Id.* (quoting *State v. Eldredge,* 773 P.2d 29, 36 (Utah 1989)). The "preservation rule applies to every claim . . . unless a defendant can demonstrate that 'exceptional circumstances' exist or 'plain error' occurred." *Id.* (citations omitted). Defendant has not argued plain error[5] or exceptional circumstances on appeal. We therefore do not address the argument further.

---

5. Defendant raises for the first time in his reply brief the argument that leaving elements of a crime out of a jury instruction may be · plain error. Because this issue was not timely raised, we do not address it. *See Brown v. Glover,* 2000

## CONCLUSION

¶ 34 In conclusion, we hold that the claim of right defense is not available for the crime of robbery because (1) the defense has been superseded by Utah Code Ann. §§ 76–1–103 and –105, and (2) the exclusion of the defense in the definition of robbery and the inclusion of the defense for the crime of theft is evidence of the legislature's intent that the claim of right defense is not available for robbery.

¶ 35 Additionally, we hold that the trial court did not abuse its discretion in rejecting additional evidence of Hughes's bias because the claim of right defense is unavailable for robbery and because the court prohibited the evidence properly under rule 403 of the Utah Rules of Evidence.

¶ 36 Finally, we hold that the trial court properly instructed the jury as to the definitions of robbery and aggravated robbery, because, read as a whole, the instructions were complete. Also, Defendant did not properly preserve the issue of whether the trial court erred in not including section 76–6–301(1)(b) in Instruction 4. Thus, we affirm.

¶ 37 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and RUSSELL W. BENCH, Judge.

UT 89, ¶ 23, 16 P.3d 540 ("Generally, issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court.").