791 P.2d 213 (1990)
STATE of Utah, Plaintiff and Appellee,
v.
NINE THOUSAND ONE HUNDRED NINETY-NINE DOLLARS, UNITED STATES CURRENCY; One Pager, Serial #0701843; and One 4" Revolver, Smith and Wesson, .44 Magnum, Model 29, Defendants,
Charles M. Goodson and Richard J. Leedy, Appellants.
No. 890258-CA.
Court of Appeals of Utah.
April 13, 1990.
*214 Richard J. Leedy (argued), Salt Lake City, for appellants.
David E. Yocom, Salt Lake Co. Atty., Rena E. Barbiero (argued), Deputy Co. Atty., Salt Lake City, for plaintiff and appellee.
Before BENCH and GREENWOOD, JJ., and JOHN FARR LARSON, Senior Juvenile Court Judge.[1]

OPINION
BENCH, Judge:
Appellants seek reversal of a district court order awarding forfeiture of seized currency to the State. We affirm.
On January 7, 1988, officers of the Salt Lake County Sheriff's Office executed a search warrant at an apartment in Salt Lake City. The officers, upon entry, found appellant Charles Goodson seated at a coffee table, leaning over a device that was being used to smoke cocaine. Goodson was arrested and searched. Cocaine and $9,199 in cash were found on his person and seized. A pager and a loaded firearm were also seized.
After a criminal charge of possession of cocaine was filed against Goodson, appellant Richard Leedy, an attorney, agreed to represent him. On January 10, 1988, Leedy obtained from Goodson an assignment of the $9,199 for the payment of attorney fees. There is no dispute that Leedy subsequently negotiated a plea agreement with the county prosecutor on Goodson's behalf, and Goodson agreed to plead guilty to a misdemeanor. Leedy also attempted to have the $9,199 returned as one of the conditions of the plea agreement, but the prosecutor agreed only to forestall forfeiture proceedings until Leedy had perfected an attorney's lien on the money.
Thereafter, a separate charge involving the sale of cocaine was filed against Goodson and a warrant was issued for his arrest. Leedy approached the same county prosecutor and allegedly secured a new plea agreement for all the outstanding drug charges. According to Leedy, Goodson agreed to plead guilty to a felony, and the money would be released to Leedy as attorney fees.
The county prosecutor concedes that a plea agreement was indeed reached on the initial charge against Goodson. The prosecutor also admits that he agreed to hold the moneys seized from Goodson until Leedy could perfect a lien. Sometime later, however, the prosecutor had a chance meeting with Leedy, who informed him that Goodson had been charged in another case and was going to plead guilty to a felony. The prosecutor stated, "Mr. Leedy asked if that plea would satisfy our case. I said it would. We each went our way." On March 31, 1988, Leedy called the prosecutor and asked if he would "sign a stipulation regarding the release of cash." The prosecutor stated that the amount of money was never discussed. When Leedy's employees presented a stipulation for the prosecutor's signature, the prosecutor asked how much money was involved, and he was allegedly told "sixty or eighty dollars." His intent in signing the stipulation was to release only that amount, which was purportedly seized at another time. He stated that he did not enter into a felony plea agreement with Leedy, since that case "was not mine to deal."
Forfeiture proceedings were commenced against the $9,199 on February 19, 1988. The parties stipulated that Leedy could intervene in those proceedings. Leedy filed a motion to dismiss the forfeiture complaint based on the failure to have a hearing within twenty days, as required by Utah Code Ann. § 58-37-13(9)(g) (1990). The motion was denied.
*215 A forfeiture hearing was held on September 9, 1988. The State elicited testimony at the hearing that the $9,199 was found in close proximity to cocaine, a controlled substance. In rebuttal, Goodson testified that he had won $7,500 of the $9,199 while gambling in Wendover, Nevada.
The district court found that Goodson had been in possession of the seized items and had not overcome the presumption that the money was drug-related. The court further found that title to the money vested in the State at the time of seizure and that the subsequent assignment of the money to Leedy was a nullity. Forfeiture was granted; Goodson and Leedy appeal that ruling.[2]
"The term `forfeiture' applies to the involuntary divestiture of specific property, without compensation, in consequence of some default or act forbidden by law." State v. Davis, 769 P.2d 840, 843 (Utah Ct.App. 1989). A "forfeiture proceeding" is a "civil action in rem against an item which was used in the commission of an offense." People ex rel. Hanrahan v. One 1965 Oldsmobile, 52 Ill.2d 37, 284 N.E.2d 646, 650 (1972), rev. on other grounds, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972); see also United States v. Sandini, 816 F.2d 869, 872 (3rd Cir.1987); Comment, State v. One (1) Porsche 2-Door: A Judicial Standard for Forfeiture of Conveyances for Simple Possession of Marijuana, 1974 Utah L.Rev. 871, 873. It proceeds upon "the legal fiction that the property itself is guilty of wrongdoing," because the property has been used in criminal activity. United States v. $152,160.00 United States Currency, 680 F. Supp. 354, 356 (D.Colo. 1988);[3]see also Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), reh'g denied, 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974); accord Utah Liquor Control Comm'n v. Wooras, 97 Utah 351, 364, 93 P.2d 455, 461 (1939) (confiscation of alcoholic beverages). All right, title, and interest in the property vests in the government at the time of the criminal act, "because the property is considered tainted upon the commission of the wrongful act." United States v. Nichols, 841 F.2d 1485, 1486 (10th Cir.1988); see also Motlow v. Missouri, 295 U.S. 97, 98, 55 S.Ct. 661, 662, 79 L.Ed. 1327 (1935) (per curiam). The fact that such assets are earmarked for payment of a defendant's attorney fees does not necessarily violate that defendant's constitutional rights under the fifth and sixth amendments. See Caplin & Drysdale, Chartered v. United States, ___ U.S. ___, 109 S.Ct. 2646, 2649, 105 L.Ed.2d 528 (1989).
In Utah, certain objects and materials are subject to civil forfeiture under the Controlled Substances Act. Utah Code Ann. § 58-37-13(1) (1990).[4] The objective of this statute is to "strike at those involved in the trafficking of drugs." State v. One 1983 Pontiac (Joe Arave), 717 P.2d 1338, 1340 (Utah 1986). Items subject to forfeiture include:
(g) everything of value furnished or intended to be furnished in exchange for a controlled substance in violation of this act, all proceeds traceable to any violation of this act, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this act; but:
....
(ii) There is a rebuttable presumption that all money, coins, and currency found in proximity to forfeitable controlled substances, drug manufacturing or distributing paraphernalia, or to *216 forfeitable records of the importation, manufacture, or distribution of controlled substances are forfeitable under this section; the burden of proof is upon claimants of the property to rebut this presumption[.]
Utah Code Ann. § 58-37-13(1)(g) (1990).
In the instant case, Leedy claims that Goodson "assigned" his interest in the money for payment of attorney fees. However, the purported assignment occurred on January 10, 1988, three days after the money was seized. Under section 58-37-13(1), "no property right exists" in property subject to forfeiture. This reference to property rights incorporates the rule that title to forfeitable property vests in the State at the time a criminal act is committed. See Comment, One (1) Porsche Two-Door, 1974 Utah L.Rev. at 882; Nichols, 841 F.2d at 1486. If the State, not Goodson, had title to the money at the time of the attempted assignment, Leedy obtained nothing from Goodson by virtue of that assignment. "Illegal use [of money] immediately vests title to the property in the sovereign, and cuts off the rights of third parties to obtain legally protectible interests in the property." United States v. $41,305.00 In Currency, 802 F.2d 1339, 1346 (11th Cir.1986). The district court thus correctly determined that there was no valid assignment of the money to Leedy.
Goodson claims that the return of the money was a distinct condition of his plea agreement, without which he could not have relied on the services of his attorney. The prosecutor does not deny the existence of a plea agreement or that he signed the stipulation releasing moneys to Leedy. He does assert, however, that his intent was to release only a small amount of money, and not the $9,199.
Plea agreements must be entered into knowingly and voluntarily and if "induced by promises, the essence of those promises must in some way be made known." Santobello v. New York, 404 U.S. 257, 261-62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262, 92 S.Ct. at 499; see also State v. Bero, 645 P.2d 44, 46 (Utah 1982). A defendant may also be entitled to enforcement of his or her plea agreement on the basis of a reasonably formed expectation. Bero, 645 P.2d at 47 (citing Cooper v. United States, 594 F.2d 12 (4th Cir.1979)). However, if the parties to the agreement never reached a "meeting of the minds," there is no "agreement" to be fulfilled. Id. at 46.
As in Bero and State v. Garfield, 552 P.2d 129 (Utah 1976), the essence of the instant dispute is what Goodson was promised in return for his plea of guilty. Leedy had prepared two stipulations for the prosecutor's signature. Both supplement the record. The first signed stipulation permitted the release of Goodson on $10,000 bail. The second stipulation permitted release of "all moneys seized in the execution of this search warrant in this matter." This second stipulation neither describes the matter, nor specifies the amount of money involved. Moreover, the record indicates that the $9,199 was seized incident to Goodson's arrest and not in conjunction with the execution of a search warrant. See State v. Banks, 720 P.2d 1380, 1384 (Utah 1986) (warrantless search may be made of individual in custody so long as probable cause for arrest exists independent of evidence discovered in search).
The district court found that the county prosecutor "purportedly stipulated to release an unstated sum of money." It is implicit from the wording of this finding that the stipulation was determined to be ambiguous. If a writing is deemed to be ambiguous and the court proceeds to find facts regarding the intentions of the parties based on extrinsic evidence, our review is limited. 50 W. Broadway Assocs. v. Redevelopment Agency of Salt Lake City, 784 P.2d 1162, 1171 (Utah 1989). "The findings and judgment based on extrinsic evidence will not be disturbed unless `clearly erroneous.'" Property Assistance Corp. v. Roberts, 768 P.2d 976, 978 (Utah Ct.App. 1989); Utah R.Civ.P. 52(a).
The district court was apparently unconvinced that the prosecutor had agreed to *217 release $9,199 in return for Goodson's felony plea. Accordingly, forfeiture was granted. Based on the record, we cannot say that the finding and judgment were clearly erroneous. Perhaps the actual plea agreement would place the determination in doubt. We have no way to examine it, however, as the record does not contain a transcript of Goodson's entry of the plea. See Utah Code Ann. § 77-13-4 (1982) ("All pleas in felony cases shall be entered by the defendant in open court and the proceedings recorded."). Since counsel failed to provide this court with all relevant evidence bearing on the issues raised on appeal, as required by Utah R.App.P. 11(e)(2), see Intermountain Power Agency v. Bowers-Irons Recreation Land & Cattle Co., 786 P.2d 250, 252 (Utah Ct.App. 1990), we can only presume that the judgment was supported by sufficient evidence. See Bevan v. J.H. Constr. Co., 669 P.2d 442, 443 (Utah 1983).
We have reviewed other issues raised by appellants and find them to be without merit. See State v. Carter, 776 P.2d 886, 888 (Utah 1989) (discussion of issues largely discretionary with appellate court).
The judgment of forfeiture is affirmed.
GREENWOOD, J., and JOHN FARR LARSON, Senior Juvenile Court Judge, concur.
NOTES
[1] John Farr Larson, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (Supp. 1989).
[2] There appears to be no challenge to the forfeiture of the pager and firearm. We therefore consider only the forfeiture of $9,199 in cash.
[3] "In contrast, a criminal forfeiture proceeding is commenced against a person rather than a thing... . [T]he action proceeds in personam against a defendant in a criminal action and is imposed as a sanction against the convicted defendant." $152,160.00 United States Currency, 680 F. Supp. at 356.
[4] Although State v. One 1979 Pontiac Trans Am, 771 P.2d 682 (Utah Ct.App. 1989), refers to Utah Code Ann. § 58-37-13 as a "criminal forfeiture statute," the reference is to context, not effect. The statute has all the attributes of civil forfeiture and we reject any interpretation to the contrary.