*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 49**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

SAMUEL AARON FRANCIS,
*Appellant.*

No. 20150616
Filed August 15, 2017

On Appeal of Interlocutory Order

Third District, Salt Lake
The Honorable Royal I. Hansen
No. 131908488

Attorneys:

Sean D. Reyes, Att'y Gen., John J. Nielsen, Asst. Solic. Gen.,
and Clint T. Heiner, Salt Lake City, for appellee

Kelly Ann Booth, Salt Lake City, for appellant

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM and JUDGE TOOMEY joined.

Having been recused, JUSTICE HIMONAS does not participate herein;
COURT OF APPEALS JUDGE KATE A. TOOMEY sat.

JUSTICE PEARCE, opinion of the Court:

### INTRODUCTION

¶1 Samuel Aaron Francis and the State entered into a plea agreement the weekend before Francis's trial. The State rescinded its offer before Francis entered his plea because Francis's alleged victim objected to the agreement. Francis's counsel then represented to the district court that she was not ready for trial because she had ceased trial preparation once she believed the parties had reached a plea

agreement. The district court continued trial. Francis later filed a motion to enforce the plea agreement. The district court denied Francis's motion. Francis petitioned for interlocutory appeal asking the court of appeals to remand with orders to enforce his agreement with the State. The court of appeals granted the petition, then certified the appeal to us. We affirm.

## BACKGROUND

¶2 After Samuel Aaron Francis allegedly beat up his girlfriend, the State leveled a host of charges against him: three third degree felony counts of aggravated assault, a third degree felony count of obstruction of justice, and a misdemeanor count of interruption of a communication device.

¶3 The district court scheduled a jury trial to begin on Monday, June 15, 2015. On the Friday before trial, the State agreed that if Francis would plead to one of his four third degree felony charges, it would offer him a "402 reduction after successful completion of probation, 24 months supervised probation, [and] no agreement for recommendation of no jail at sentencing." Francis accepted the plea offer on Saturday and emailed a copy of the agreement to the State for review on Sunday.

¶4 The State returned the agreement with substantive edits the morning of trial.[1] An hour later—before the judge took the bench and before Francis entered his plea—the State rescinded its offer because the alleged victim disapproved of the agreement.

¶5 At Francis's request, the court granted a continuance and rescheduled the jury trial for August 2015. Francis then filed a motion to enforce the plea agreement, arguing that he had detrimentally relied on the State's offer. The court rejected the motion. Francis timely sought interlocutory review in the court of appeals. We now review this case on certification from the court of appeals.

---

[1] The State argues that it was still engaged in plea agreement negotiations at the time of rescission and, thus, it rescinded the plea offer before an agreement had been reached. For purposes of this opinion, we assume without deciding that Francis had accepted a valid plea offer at the time the State rescinded.

¶6 Francis argues that he was prejudiced because, having relied on the recently rescinded plea offer, he was unprepared to go forward with trial. Next, he alleges that the withdrawn plea agreement caused him to forego "the investigation and assertion of claims regarding alleged *Brady* and *Tiedemann* violations." He also argues that he was prejudiced because one of his witnesses had expressed hesitancy to return and testify. The State counters that it could rescind an offer at any time before the court accepts a plea.

¶7 We affirm the district court's order denying enforcement of the plea agreement, but we do so for slightly different reasons than the district court articulated. We have jurisdiction under Utah Code section 78A-4-103(2)(d).

## ISSUES AND STANDARD OF REVIEW

¶8 Francis argues that the district court erred in rejecting his motion to enforce the State's plea offer because plea agreements create a contractual right for defendants and because he relied to his detriment upon the State's offer. The enforceability of a plea agreement presents a question of law we review for correctness. *State v. Stringham*, 2001 UT App 13, ¶ 10, 17 P.3d 1153.

## ANALYSIS

¶9 Francis admits that there is no Utah case squarely addressing whether the State can withdraw a plea agreement before it is accepted by the court. He relies on language in *State v. Patience* to emphasize that "[m]any courts, including the Utah Supreme Court and the United States Supreme Court, have referred to plea agreements as contracts and have applied principles derived from contract law to plea agreements." 944 P.2d 381, 386 (Utah Ct. App. 1997).[2] He acknowledges that contract law principles "cannot be

---

[2] Francis also quotes the following language from *State v. Patience*: "in interpreting plea agreements or determining their validity, courts may in certain circumstances hold the government to a higher standard than the defendant." 944 P.2d 381, 387 (Utah Ct. App. 1997). *Patience* does not describe what it means to hold the State to a higher standard, but it borrows that concept from the United States Court of Appeals for the Fourth Circuit. *See United States v. Ringling,* 988 F.2d 504, 506 (4th Cir. 1993). The *Ringling* court stated that when interpreting a plea agreement "both constitutional and supervisory concerns require holding the government to a greater degree of

(continued . . .)

blindly incorporated into the criminal law in the area of plea bargaining." *Id.* at 387 (citation omitted). However, he asks us to apply contract law provisions "more broadly in the plea agreement context in order to ensure that a defendant's constitutional rights are protected." Relying on contract principles, he argues that his "clear acceptance" of the State's "clear, unconditional, specific, and complete" offer created an enforceable plea agreement. Based upon the Utah Court of Appeals' holdings in both *Patience*, 944 P.2d at 387, and *State v. Nine Thousand One Hundred Ninety-Nine Dollars*, 791 P.2d 213 (Utah Ct. App. 1990), Francis argues that contract principles required the district court to enforce his plea agreement because he relied upon the agreement to his detriment.

¶10 Using the language of contract law, the district court determined that the State is "not bound by [the plea agreement] until there is an acceptance." The district court stated that the plea agreement "was not accepted by the Court or entered of record." The court thus concluded that "[t]he State can rescind the offer up and to the point that the Court accepts the offer and enters the plea of record, neither of which took place here."

¶11 We begin from the premise that a defendant does not have a constitutional right to a plea agreement. *Weatherford v. Bursey,* 429 U.S. 545, 561 (1977). But once an agreement is reached, the parties have what the United States Supreme Court has described as "essentially" a contract. *See Puckett v. United States,* 556 U.S. 129, 137 (2009). But the Supreme Court also recognizes that the analogy to contract, "may not hold in all respects." *Id.* Indeed, although contract principles may provide a useful framework within which to consider

---

(continued . . .)

responsibility than the defendant (or possibly than would be either of the parties to a commercial contract) for imprecisions or ambiguities in plea agreements." *Id.* (citation omitted). We do not understand the *Patience* court to have introduced the "higher standard" language as an attempt to impose a code of conduct on the State with respect to plea agreements. We note, however, that playing games with plea agreements would violate Utah Standard of Professionalism and Civility 9—"Lawyers shall not hold out the potential of settlement for the purpose of foreclosing discovery, delaying trial, or obtaining other unfair advantage . . . ."

plea agreements, "there are limits to the contract analogy." *Patience*, 944 P.2d at 387; *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993) ("Plea bargains rest on contractual principles . . . . Yet, the analysis of the plea agreement must be conducted at a more stringent level than in a commercial contract because the rights involved are generally fundamental and constitutionally based."); *United States v. Olesen,* 920 F.2d 538, 542 (8th Cir. 1990) (recognizing "the inherent limits of the contract analogy"); *People v. Evans,* 673 N.E.2d 244, 247 (Ill. 1996) (stating that "the application of contract law principles to plea agreements may require tempering in some instances"). Thus, while "[p]lea agreements are *like* contracts[,] . . . they are not contracts, and therefore contract doctrines do not always apply to them." *Olesen,* 920 F.2d at 541.

¶12 We accept the district court's conclusion that the State was not bound by the plea agreement, but we articulate a slightly different rationale than the one the district court employed. The district court asserted that the State could rescind the plea agreement at any point prior to its presentation to the district court. We refine the district court's articulation because it is too narrow and leaves no room for ways in which a defendant may detrimentally rely on an agreement before it is presented to the district court. For example, a plea agreement might require a defendant to perform by

> [p]roviding information to government authorities, testifying for the government, confessing guilt, returning stolen property, making monetary restitution, failing to file a motion to have charges presented to a grand jury, submitting to a lie detector test and waiving certain procedural guarantees . . . .

WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 21.2(f) (4th ed. 2015) (citation omitted).

¶13 Those actions "have all been held to constitute acts made in detrimental reliance upon a prosecutor's breached promises." *Id.* (citation omitted); *see also People v. Macrander*, 756 P.2d 356, 361 (Colo. 1988) (en banc) (finding that defendant detrimentally relied on plea agreement when he waived his right to a preliminary hearing); *Moody v. State*, 716 So. 2d 592, 595 (Miss. 1998) (finding detrimental reliance when defendant gave statements regarding charged and uncharged crimes and supporting those statements by taking lie detector tests); *Custodio v. State*, 644 S.E.2d 36, 39 (S.C. 2007) (finding detrimental reliance when defendant took substantial steps in cooperating with law enforcement by informing them of his other

crimes and helping them return "over a half million dollars in stolen property").

¶14 When a defendant has reasonably and detrimentally relied on a plea agreement, the State should not be able to withdraw a plea agreement just because it has not yet been presented to the district court. As the First Circuit explained,

> absent evidence to the contrary, we will not assume that the government has bound itself contractually to offer a particular plea . . . . Instead, unless a plea agreement states otherwise, we will presume that the agreement itself simply documents "an offer by the government: if the defendant pleads guilty and if that plea is accepted by the court, then the government will perform as stipulated in the agreement." However, "[u]ntil performance [takes] place by [the defendant], the government [is] free to withdraw its offer." In short, the obligation to perform is conditional on actual performance by the defendant (or perhaps some other form of detrimental reliance).

*United States v. Vizcarrondo-Casanova*, 763 F.3d 89, 103 (1st Cir. 2014) (alterations in original) (citations omitted). "[T]he State may withdraw from a plea bargain agreement at any time prior to, but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance upon the agreement." *Shields v. State*, 374 A.2d 816, 820 (Del. 1977).

¶15 Francis asserts that defendants have a right to the enforcement of plea deals prior to court acceptance simply based on "a reasonably formed expectation." And Francis cites two cases in hopes of supporting that assertion. *See Nine Thousand One Hundred Ninety-Nine Dollars*, 791 P.2d 213; *State v. Bero*, 645 P.2d 44 (Utah 1982). Neither of the cases Francis cites speaks persuasively to the issue before us.

¶16 In *Nine Thousand One Hundred Ninety-Nine Dollars*, the court of appeals stated that "[a] defendant *may* . . . be entitled to enforcement of his or her plea agreement on the basis of a reasonably formed expectation." 791 P.2d at 216 (emphasis added). A court of appeals pronouncement does not, of course, bind this court to a course of action. Further, the statement Francis quotes was dicta. The court of appeals ruled that the parties "never reached a 'meeting of the minds,'" so "there [was] no 'agreement' to be fulfilled." *Id.*

(quoting *Bero*, 645 P.2d at 46). The court did not, therefore, need to examine the question of what defendant needed to demonstrate to enforce the agreement.

¶17 In *Bero*, we noted that the United States Court of Appeals for the Fourth Circuit had "held that a constitutional right to enforcement of plea agreements may arise before a contract is reached because of reasonably formed expectations of the defendant." *Bero*, 645 P.2d at 47. But this statement was dicta as the *Bero* court, like the court of appeals in *Nine Thousand One Hundred and Ninety-Nine Dollars*, found that there was never any agreement to be enforced. *Id.*

¶18 Francis also argues that the district court should have enforced the plea agreement because he relied on it to his detriment. Francis lists four ways in which withdrawal of the agreement prejudiced him: (1) he "forwent the investigation and assertion of claims regarding alleged *Brady* and *Tiedemann* violations;" (2) he "presented himself on the day of trial without the benefit of counsel who could provide effective assistance" because, Francis claims, the State had "induced" him to forego trial preparation; (3) "at least one witness who appeared at the trial on June 15 is likely to fail to appear at any subsequent hearing in this matter;" and (4) he "is required to pay the expert he retained in this case additional monies." We are unpersuaded by his arguments.

¶19 First, Francis's assertion that he forwent his *Brady/Tiedemann* claims appears to be inaccurate. Francis briefed and argued those claims. The district court rejected them. If the withdrawn plea agreement somehow interfered with his ability to investigate, brief, or argue his *Brady/Tiedemann* claims, Francis does not explain how that is.

¶20 Second, Francis was not forced to go to trial unprepared. The district court granted his motion for a continuance after the State withdrew the plea agreement. Francis may have had an argument if the court had required trial to go forward that morning and he could demonstrate that his counsel was reasonably unprepared. But the district court mitigated any potential prejudice by continuing the trial. Any reliance ceased to be detrimental once the court eliminated the prejudice flowing from that reliance. *See State v. Moss*, 921 P.2d 1021, 1027 (Utah Ct. App. 1996) (holding that "[w]here the defendant

is simply placed in the same position as he or she was prior to the guilty plea, there is no undue prejudice to the defendant").[3]

¶21 Francis's third assertion, that a witness "is likely to fail to appear at any subsequent trial" likewise fails to move the needle. Courts are routinely faced with reluctant and unwilling witnesses. Such witnesses can be subpoenaed and made to appear in court or face contempt proceedings. *See* UTAH R. CRIM. P. 14(a)(7) ("Failure to obey a subpoena without reasonable excuse may be deemed a contempt of the court responsible for its issuance."). Moreover, even if Francis could show that the witness was no longer available, to meet his burden of persuasion, Francis would need to do more than point to that witness's absence. Francis would have to explain who the witness is, what the testimony would have been, why the testimony cannot be obtained from another source, and how the lack of that testimony adversely affected his defense before we could conclude that he had been prejudiced.

¶22 Finally, we are unsure how Francis would have incurred additional expenses for his expert witness "because of the State's actions." Francis simply argues that "[the expert witness] was called off when the plea agreement was reached." Although we can imagine that there may be potential for costs associated with the expert having to prepare twice, Francis does not argue that this is what occurred. Nor are we convinced that this increase in cost is the sort of reliance that would compel the enforcement of a plea agreement. As explained above, courts have found detrimental reliance when defendants have provided testimony, assisted with investigations, returned stolen property, and taken polygraph tests. *See supra* ¶¶ 12–13. We are not prepared to hold, on the record before us, that a potential and unquantified increase in the cost of defense gives rise to the same sort of prejudice. Simply stated, Francis did

---

[3] Francis also argues that he was prejudiced by "the State's objection to [his] request to continue trial" and "[t]hat the court did not grant the State's request does not alleviate the prejudice suffered by Francis." Francis does not elaborate on this point, and from the record it would appear that by continuing the trial date, the district court entirely alleviated any prejudice Francis might have suffered if he had been forced to go to trial that morning.

not demonstrate that he relied upon the plea agreement to his detriment.

## CONCLUSION

¶23 The State may withdraw from a plea bargain agreement at any time prior to, but not after, the actual entry of defendant's guilty plea or other action by defendant constituting detrimental reliance on the agreement. Francis did not enter a guilty plea or otherwise perform under the terms of his plea agreement with the State before the State rescinded its offer. And Francis has failed to show that he detrimentally relied on the State's offer. We, therefore, affirm the order of the district court denying Francis's motion to enforce his plea agreement and remand for further proceedings.