2024 UT App 172

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
JESUS MOLINA,
Appellee.

Opinion
No. 20220853-CA
Filed November 21, 2024

Thid District Court, West Jordan Department
The Honorable Chelsea Koch
No. 171404311

Sean D. Reyes, Christopher A. Bates, and Andrew F.
Peterson, Attorneys for Appellant

Andrea J. Garland, E. Rich Hawkes, and Justin F.
Knell, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES JOHN D. LUTHY and AMY J. OLIVER concurred.

CHRISTIANSEN FORSTER, Judge:

¶1    The State of Utah offered Jesus Molina a plea deal: in exchange for his plea of guilty to a reduced charge of felony manslaughter, the State would affirmatively recommend that the district court sentence him to serve an additional year in jail and then place him on probation. But before Molina entered his guilty plea, the State rescinded its offer. Molina sought to enforce the plea agreement, and the district court ordered specific performance of the plea deal after determining that Molina had detrimentally relied on the State's promise.

¶2    The State petitioned for interlocutory review of the district court's order. We determine the court erred in finding that Molina

detrimentally relied on the State's offer. Accordingly, we reverse and remand the case for further proceedings on the charges.

BACKGROUND[1]

¶3    On Halloween night in 2017, Molina, Dominic,[2] and several other people were "driving around . . . to look for a party." Later that night, as they were dropping off Dominic, "an argument . . . broke out" between Molina and Dominic. The argument escalated into a fight, and Dominic "fell to the ground" and died from a "[g]unshot wound to the chest." After the fight, Molina fled to Mexico but was later arrested.

¶4    In December 2017, the State charged Molina with one count of murder. The case suffered numerous delays due to "continuances requested by one or both parties, as well as additional delays caused by the COVID-19 pandemic." In June 2021, Molina requested a pretrial justification hearing, as authorized by Utah Code section 76-2-309.[3] After the justification

---

1. Because this case comes to us on interlocutory appeal and there has not yet been a trial, we recite the alleged facts from relevant case documents. Molina retains the presumption of innocence that attaches prior to conviction.

2. A pseudonym.

3. "The recently enacted pretrial justification statute . . . allows for a district court to assess claims of self-defense at an earlier stage in a criminal case. The statute provides that if a criminal defendant files a motion requesting a pretrial justification hearing, then the district court must hold an evidentiary hearing to determine as a matter of fact and law whether the defendant was justified in the use or threatened use of force. At the evidentiary hearing, the defendant must first make a prima facie claim of

(continued…)

hearing had been rescheduled twice—once on the State's motion and once to accommodate the district court's calendar—the State agreed that if Molina pleaded guilty to second-degree felony manslaughter, it would recommend that Molina serve only one additional year in jail before being released on probation. Molina agreed to the plea offer.

¶5      At a telephone conference held on the Friday before the Monday morning on which the justification hearing was to begin, the State and Molina informed the district court they had reached a tentative plea agreement and presented the agreement to the court for advanced approval under rule 11 of the Utah Rules of Criminal Procedure.[4] After the agreement was presented, the prosecutor expressed to the court that "the likelihood of the State surviving the justification hearing [was] low enough" that the proposed agreement was "the appropriate resolution." The court

---

justification. If the court determines the defendant has made a prima facie claim, then the State has the burden to prove by clear and convincing evidence that the defendant's use or threatened use of force was not justified. If the State meets this burden, the defendant's motion is denied, the case proceeds, and the defendant may raise the issue of justification to the jury at trial. But if the State fails to meet its burden, the district court must dismiss the relevant charges against the defendant." *State v. Clara*, 2024 UT 10, ¶ 9, 546 P.3d 963 (quotation simplified).

4. Rule 11(i)(2) of the Utah Rules of Criminal Procedure states,

> When a tentative plea agreement has been reached, the judge, upon request of the parties, may permit the disclosure of the tentative agreement and the reasons for it, in advance of the time for tender of the plea. The judge may then indicate to the prosecuting attorney and defense counsel whether the proposed disposition will be approved.

indicated that the proposed disposition was acceptable and set the plea hearing for Monday morning.

¶6     Later that evening, however, at the direction of his supervisors, the prosecutor informed Molina that the State was withdrawing its offer because the supervisors had told the prosecutor that he did not have the authorization to make the contemplated sentencing recommendation. The prosecutor advised Molina that he could still plead guilty to manslaughter but that the State would seek a presentence report and affirmatively recommend that the court sentence Molina based on that report.

¶7     When the parties appeared before the district court on Monday morning, Molina moved the court to order enforcement of the plea deal because he had "substantially relied on [the] agreement already." He informed the court that after he "entered the agreement on Friday" he "called off" his justification witnesses. He argued that under *State v. Francis*, 2017 UT 49, 424 P.3d 156—wherein the supreme court laid out the legal framework for determining whether a defendant has detrimentally relied on a withdrawn plea agreement—he had detrimentally relied on the State's promise by presenting "otherwise privileged plea negotiations to the judge," signaling his willingness to plead guilty, and diluting his right to a speedy trial by calling off his witnesses. Regarding the last point, he explained that due to the age of the case and the number of times the witnesses had already been subpoenaed, it would be "very difficult to get [his] witnesses back on board" and that he would not be able to move forward with the justification hearing that week. The State opposed Molina's motion.

¶8     After considering the parties' arguments, including briefing the parties prepared at the court's request, the district court granted Molina's motion. The court concluded that while no one factor alone established that Molina had detrimentally relied on the plea agreement, "the cumulative effect of all of the factors"

did. These factors included that (1) Molina's "decision to accept the plea agreement caused him to admit to facts on the record," (2) Molina had "forfeit[ed] his justification hearing for another six months," and (3) Molina had "risked his ability to secure witnesses" for a future hearing.

¶9 In assessing these factors, the district court found that in an attempt to persuade the court to accept and enforce the agreement, Molina had admitted on the record that he was willing "to plead guilty to manslaughter and serve an additional year in jail," which was "detrimental" to Molina and "would never have been placed on the record prior to a justification hearing had he not anticipated a plea." The court found that this admission was "even more significant" to its analysis given the State's concession made at the rule 11 conference "that it was unlikely to prevail at the justification hearing."

¶10 The district court also found that by calling off his witnesses, Molina "likely [knew] that he would have to wait another lengthy period of time for another justification hearing" and that the court's busy calendar could not accommodate a new hearing "for almost six additional months." Further, both parties had already "experienced difficulty in securing the appearance of the witnesses given the number of times they had been subpoenaed and the age of the case."

¶11 The State filed a petition for interlocutory review, which we granted.

ISSUE AND STANDARD OF REVIEW

¶12 The sole issue on appeal is whether the district court correctly determined that Molina detrimentally relied on the plea agreement offered by the State. "The enforceability of a plea

agreement presents a question of law we review for correctness."
*State v. Francis*, 2017 UT 49, ¶ 8, 424 P.3d 156.[5]

---

5. Molina does not dispute that the district court's ultimate decision to enforce the plea agreement is a question of law that we review for correctness. However, he contends the court's subsidiary determination that he detrimentally relied on the agreement is entitled to deference. To that end, Molina devotes a significant portion of his appellate brief explaining the framework our supreme court has adopted for analyzing differing standards of appellate review, *see, e.g.*, *Randolph v. State*, 2022 UT 34, ¶¶ 17–26, 515 P.3d 444, and he argues that under this framework, the court's findings regarding detrimental reliance are findings of fact that should be reviewed for clear error. He further argues that to the extent the court's detrimental reliance determination involves a mixed question, it is fact-like and must be accorded deference. Molina's argument is unavailing on both fronts.

First, a determination that a defendant detrimentally relied on a plea agreement necessarily means the agreement is enforceable. *See State v. Francis*, 2017 UT 49, ¶ 14, 424 P.3d 156. Thus, applying a different, more deferential standard of review to the detrimental reliance inquiry would effectively transform the standard of review for the enforceability inquiry into a more deferential standard as well. And this would directly conflict with the correctness standard of review that Molina agrees applies when evaluating the enforceability of a plea agreement.

Second, the question of whether a defendant detrimentally relied on a withdrawn plea agreement is a law-like mixed question. To determine whether a mixed question should be deemed law-like or fact-like, we apply a "balancing test" that involves the consideration of three factors: "(1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on facts observed by the trial judge, such as a witness's appearance and demeanor, relevant to the application

(continued…)

ANALYSIS

¶13   "[A] defendant does not have a constitutional right to a plea agreement," but once an agreement has been reached, the parties must adhere to certain conduct. *State v. Francis*, 2017 UT 49, ¶ 11, 424 P.3d 156. As a general rule, "the State may withdraw from a plea bargain agreement at any time prior to . . . the actual

---

of the law that cannot be adequately reflected in the record available to appellate courts; and (3) other policy reasons that weigh for or against granting discretion to trial courts." *Randolph*, 2022 UT 34, ¶ 25 (quotation simplified); *see also State v. Levin*, 2006 UT 50, ¶ 25, 144 P.3d 1096.

Utilizing this test to evaluate the mixed question at issue here, it is readily apparent that all three factors point in the same direction: that whether a defendant detrimentally relied on a plea agreement is a law-like question. Specifically, the first two factors do not favor deferential review because the facts involved in determining whether a defendant detrimentally relied on a plea agreement (namely, the timing of the plea agreement and withdrawal, the content of the agreement, and any actions the defendant took in reliance on the agreement) are usually relatively simple and can be easily identified; likewise, a detrimental reliance determination does not typically rely heavily on credibility determinations or other factual determinations that cannot be adequately conveyed on the record. Lastly, even if these first two factors provided a strong basis for adopting a deferential standard of appellate review, they would nevertheless be outweighed by the practical need for consistency in plea enforcement decisions. Although there is no constitutional right to a plea agreement, *see Francis*, 2017 UT 49, ¶ 11, the rights implicated in a plea agreement are "generally fundamental and constitutionally based," *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993). And where the application of a legal rule implicates "constitutional protections," the supreme court has held that "there is a strong interest in promoting clarity and consistency in our state's jurisprudence." *Levin*, 2006 UT 50, ¶ 41.

entry of the guilty plea by the defendant." *Id.* ¶ 14 (quotation simplified). However, this general rule is subject to a detrimental reliance exception. *Id.* That is, the State may not withdraw from a plea agreement "[w]hen a defendant has reasonably and detrimentally relied" on the agreement because a defendant's detrimental reliance on a prosecutorial promise in plea bargaining makes a plea agreement binding. *Id.* ¶¶ 12–14.

¶14 In this case, Molina agreed to plead guilty in exchange for the reduction of the charge and sentencing recommendation but did not enter the plea before the State rescinded its offer. Thus, Molina's motion to enforce the plea agreement—and the district court's order granting the motion—rested on his assertion that he had detrimentally relied on the State's promise before the prosecutor withdrew the offer.

¶15 Before the district court and again on appeal, both parties argue that *State v. Francis*, 2017 UT 49, 424 P.3d 156, is controlling. In *Francis*, the defendant argued the trial court should be required to enforce a plea agreement the State had rescinded on the morning of trial. *Id.* ¶¶ 4–6, 18. According to the defendant, his reliance on the agreement had worked to his detriment in four ways: (1) he had forgone his investigation and assertion of certain discovery claims; (2) he had discontinued trial preparation; (3) one of the witnesses who had been scheduled to appear at trial was unlikely to appear at a future trial date; and (4) he would incur additional expert witness fees. *Id.* ¶ 18.

¶16 The supreme court rejected all the defendant's arguments. First, the court found the defendant had already raised, and the trial court had rejected, the allegedly forgone discovery claims. *Id.* ¶ 19. Second, the court determined the defendant was not forced to go to trial unprepared because the trial court had granted a continuance after the State withdrew the plea agreement. *Id.* ¶ 20. Third, the court found unpersuasive the defendant's assertion that the witness was unlikely to appear at a future trial. *Id.* ¶ 21. The court explained that it is commonplace for "reluctant and

unwilling witnesses" to be needed for trial, and that such witnesses "can be subpoenaed and made to appear in court." *Id.* Further, to "meet his burden of persuasion" on this point, the defendant would have needed "to explain who the witness [was], what the testimony would have been, why the testimony [could not] be obtained from another source, and how the lack of that testimony [would] adversely affect[] his defense." *Id*. Finally, as to the additional expert witness cost, the court ruled that "a potential and unquantified increase in the cost of defense" was not "the sort of reliance that would compel the enforcement of a plea agreement." *Id*. ¶ 22.

¶17    In rejecting the defendant's arguments, the supreme court did not set forth a specific test for establishing detrimental reliance on a plea agreement. The court instead recognized a number of actions that have "been held to constitute acts made in detrimental reliance upon a prosecutor's breached promises." *Id*. ¶ 13 (quotation simplified). Those actions include "providing information to government authorities, testifying for the government, confessing guilt, returning stolen property, making monetary restitution, failing to file a motion to have charges presented to a grand jury, submitting to a lie detector test[,] and waiving certain procedural guarantees." *Id*. ¶ 12 (quotation simplified).

¶18    Here, the district court concluded that Molina had detrimentally relied on the State's offer because his decision to accept the plea agreement caused him to (A) admit to a key fact on the record and (B) call off his witnesses. The State argues the court was incorrect on both fronts. We address each in turn.

A.    Admitting a Key Fact on the Record

¶19    The district court found that during the rule 11 conference and also on the morning of the scheduled plea hearing, Molina put a key fact "on the record in an effort to persuade the Court to accept and enforce the agreement." This fact was Molina's

"willingness to plead guilty to manslaughter and serve an additional year in jail." The court found that this fact was "detrimental" to Molina and that it "would never have been placed on the record prior to a justification hearing had [Molina] not anticipated a plea."[6] But we fail to see how this admission constitutes detrimental reliance.

¶20 First, construing the mere indication to the district court of a willingness to plead guilty to a lesser charge in return for a recommendation of a lower sentence as detrimental reliance would undermine our rules related to guilty pleas. Under our rules of criminal procedure, before accepting and entering a plea of guilty, a court must ensure that the plea is knowing, is voluntary, and has an adequate factual basis. *See* Utah R. Crim. P. 11(e). Were we to allow a plea agreement to become enforceable based solely upon a defendant's communication to the court of a willingness to tender a plea, the requirements for accepting a plea outlined in our rules of criminal procedure would effectively be nullified. This would also create the bizarre situation where a plea agreement that a court has rejected would nonetheless still be enforceable simply because the defendant had indicated to the court a willingness to plead guilty.

¶21 Second, Molina's willingness to plead guilty to manslaughter and serve an additional year in jail did not provide the district court with any new material information about his case. And the fact that Molina had requested a justification hearing does not change the analysis. As an initial matter, Molina

---

6. Relatedly, the district court found that Molina "revealed trial strategy . . . in his arguments to obtain the plea agreement and to enforce the agreement." But this finding lacks any record support. The only thing Molina revealed during the rule 11 conference was that the parties had reached a tentative plea agreement that he was willing to accept. And Molina did not reveal any "strategy" while attempting to enforce the agreement the following Monday because the agreement had already been withdrawn.

was charged with murder for fatally shooting Dominic. By requesting a justification hearing, Molina had necessarily already admitted that he had used force against Dominic—the point of the justification hearing was to determine whether Molina's use of force had been justified. Moreover, judges understand that defendants frequently choose to waive their right to maintain their innocence, for a variety of reasons; indeed, plea bargaining is essential to our system of justice, *Santobello v. New York*, 404 U.S. 257, 260 (1971). Even in cases such as this, where a defendant claims that his use of force was justified, he might nevertheless prefer to accept a guilty plea to secure an agreed-upon sentence in order to guard against potential deficiencies in the strength of the evidence supporting a justification defense or in order to avoid the expense and stress of trial.

¶22 Third, even if Molina's willingness to plead guilty and serve an additional year in jail had somehow conveyed information to the district court that was "detrimental" to Molina, courts are routinely required to set aside information that is unfavorable to one party that is revealed during the proceedings. There are many situations in our justice system where this occurs, including when in the case of a bench trial a court sustains a motion to strike an answer, grants a motion in limine to exclude evidence, or considers evidence at a preliminary hearing that is ultimately inadmissible at trial. In all these situations, the court has an obligation during later stages of the proceeding to disregard the information learned previously. *See State v. Graham*, 2012 UT App 332, ¶ 31, 291 P.3d 243 ("Utah appellate courts presume that when conducting a bench trial, the trial court considers only admissible evidence and disregards any inadmissible evidence." (quotation simplified)). Molina has not persuaded us that a different result should follow here. Thus, we agree with the State that even had the court learned information potentially unfavorable to Molina prior to making an adjudicative decision, that does not by itself constitute detrimental reliance.

¶23    Lastly, by indicating a willingness to plead guilty to manslaughter, Molina did not forfeit any potential arguments at a future justification hearing or trial or otherwise narrow his range of possible defenses. The State would not be allowed to use any statements Molina made during the plea negotiations, or during the rule 11 conference, against him at trial. *See* Utah R. Evid. 410(a) (barring evidence of "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea"). Nor would any such statements be admissible at a justification hearing. *See id.*

B.    Calling off Witnesses

¶24    During the brief interval between the Friday rule 11 conference with the district court and the State's withdrawal of the plea offer, Molina called off his justification witnesses. When the parties appeared before the court on Monday morning, Molina asserted that this decision was attributable to the fact that he had "substantially relied" on the plea agreement. He then informed the court that because he had called off his witnesses, he was unprepared to move forward with the scheduled justification hearing that week. Consequently, he argued, the court should enforce the agreement.

¶25    The district court credited Molina's argument on this point. The court concluded that Molina had relied to his detriment on the plea agreement when he "called off all witnesses." The court reasoned that this action constituted detrimental reliance because by calling off his witnesses, Molina "forfeit[ed] his justification hearing for another six months and risked his ability to secure witness." But the premise on which the court's conclusion is based is faulty, and therefore neither of the stated justifications demonstrate that Molina detrimentally relied on the plea.

¶26    To begin, nothing in the plea agreement required, or even suggested, that Molina call off his witnesses. Likewise, at no point did the State instruct Molina to call off his witnesses or suggest he

should do so because of the agreement. His decision to do so was entirely voluntary. That distinguishes this case from the range of cases where courts have found detrimental reliance based on actions the defendant took that were *required* under the plea agreement. *See State v. Francis*, 2017 UT 49, ¶¶ 12–13, 424 P.3d 156 (collecting cases).

¶27　Next, it was not the plea offer itself that induced Molina to call off his witnesses; rather, it was Molina's belief that the district court would accept the plea, thereby rendering the justification hearing unnecessary. This assumption on *Molina's* part does not mean that the *State* induced him to call off his witnesses. *See generally State v. Stringham*, 2001 UT App 13, ¶ 14, 17 P.3d 1153 ("The decision whether to accept or reject a plea agreement lies within the discretion of the trial court. Thus, even where the government and the defendant reach a plea agreement, the court is not required to accept it." (quotation simplified)). Indeed, as just noted, the State never so much as suggested to Molina that he do so.

¶28　Moreover, Molina's belief that the district court would accept and enter the plea also rested on a further assumption. That is, Molina assumed the court would find that his plea of guilty was knowing, voluntary, and had an adequate factual basis. *See* Utah R. Crim. P. 11(e) (stating that the court "may refuse to accept a plea of guilty" and explaining that the court "may not accept [a] plea until the court has" made findings in accordance with the rule). Although the court indicated at the rule 11 conference that it would follow the parties' proposed disposition, at that point it had not yet heard from Molina, had not yet heard the factual basis for the plea, and had not yet made any of the required findings. *See id.* There are any number of things that could have happened at the plea hearing that would have led—or even required—the court to ultimately reject the agreed-upon plea despite the court's initial indication of a willingness to accept the parties' agreement. *See, e.g.*, *Kelty v. Warden Walden Corr. Inst.*, No. 15-cv-01130, 2015 WL 10372438, at *1 (D.S.C. Dec. 18, 2015) (rejecting plea where the

defendant testified during the plea hearing that he "did not remember committing the charged crime"); *People v. Ottomanelli*, 505 N.E.2d 1328, 1329, 1331 (Ill. App. Ct. 1987) (rejecting a negotiated plea after the defendant failed to offer sufficient facts during the plea colloquy to establish a factual basis for the plea); *State v. Wallace*, 480 S.E.2d 673, 675 (N.C. 1997) (rejecting a proposed plea after the prosecutor revealed new facts during the plea hearing); *cf. State v. Lopez*, 2005 UT App 496, ¶¶ 4, 26–27, 128 P.3d 1 (setting aside a guilty plea where the defendant had not been offered a copy of the plea statement in his native language), *cert. denied*, 138 P.3d 589 (Utah 2006).

¶29     In light of the foregoing, neither of the reasons the district court cited as factors in its detrimental reliance analysis are availing. Aside from the fact that neither the plea agreement itself nor the State required Molina to call off his witnesses, any delay in rescheduling Molina's justification hearing was completely unrelated to the plea agreement—or anything the State had done—and was instead due to scheduling conflicts on the part of *the court*. This point was underscored by the court when it explained that it would be unable to schedule "another five-day setting for almost six additional months" due to its "insane" calendar. Similarly, because Molina's decision to call off his witnesses was not the result of detrimental reliance on representations by the State, any consequences flowing from that decision are not attributable to the State. Therefore, even if Molina's decision to call off his witnesses does in fact result in difficulties securing these witnesses in the future, any such difficulties would not constitute grounds for enforcing the plea agreement.[7]

---

7. The district court also incorrectly concluded that a likely difficulty of securing witnesses in the future is grounds for a determination of detrimental reliance. In *State v. Francis*, 2017 UT 49, 424 P.3d 156, our supreme court squarely rejected the notion

(continued…)

CONCLUSION

¶30    The State may not withdraw from a plea agreement if a defendant has reasonably and detrimentally relied on the State's offer. Here, the district court incorrectly concluded that Molina detrimentally relied on the State's promise. We therefore reverse the court's order granting Molina's motion to enforce his plea agreement and remand the matter for further proceedings.

——————

that a bald assertion that a witness may fail to appear at a subsequent hearing or trial is sufficient to prove that the defendant's purported reliance was detrimental to the defense. *Id.* ¶ 21. Rather, to carry his burden of persuasion on such a claim, Molina was required to "show that the witness was no longer available," as well as to explain "who the witness [was], what the testimony would have been, why the testimony [could not] be obtained from another source, and how the lack of that testimony [would] adversely affect[] his defense." *Id.* Although Molina identified for the court who his witnesses were and provided a general explanation as to what some of them might say, he did not provide specifics about their potential testimony or specifically explain why that testimony could not be obtained from another source. And perhaps even more importantly, Molina wholly failed to establish that any of the witnesses were "no longer available." *Id.* The crux of his argument was simply that their cooperation would be difficult to obtain. This is not enough to prove that the purported reliance was detrimental. *See id.*